## McGAHAN *v.* BANK OF RONDOUT.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF SOUTH CAROLINA.

No. 104. Argued December 12, 1894. — Decided February 4, 1895.

In a suit of equity to enforce the rights of a mortgagee in mortgaged realty, the defence that the temporary withholding of the mortgage from record invalidated it as against creditors cannot be made in the first

instance in this court, when the issue is not made by the pleadings and was not otherwise raised in the court below.

Where a deed is executed on behalf of a firm by one partner, the other partner will be bound if there be either a previous parol authority or a subsequent parol adoption of the act.

In such case ratification by the other partner may be inferred from his presence at the execution and delivery of the deed, or from his acting under it or taking the benefits of it with knowledge.

In South Carolina a tenant in common of real estate, who takes sole possession of it, excluding his cotenant, is chargeable with what he has received in excess of his just proportion, and is liable to account to him for the rents and profits of so much of the common property as he has occupied and used in excess of his share.

After the execution and delivery of a mortgage of real estate in South Carolina to a citizen of New York, the estate was sold under a judgment obtained subsequent to the mortgage and the purchasers went into possession. The mortgagee filed a bill in equity against them in the Circuit Court of the United States for the District of South Carolina, asking an injunction against commission of waste, a discovery of the amount and value of trees cut by them since they came into possession, and an accounting to the court for the same, and for a sale of the mortgaged premises for the payment of the mortgage debt. The mortgagor had died before the commencement of the suit, and his heirs were not made parties, they being citizens of the same State as the plaintiff. No objection was made to proceeding in their absence, and a decree of foreclosure and sale was made as to them, and they were further ordered to account for the conversion of the property which they had taken. *Held,*

(1) That as the decree was operative to the extent of the foreclosure and sale, it could be sustained in respect of the accounting;

(2) That the appellants could not insist, in this court, upon an objection which, if sustained, would curtail the relief to which the appellee was entitled, or overthrow the jurisdiction of the Circuit Court.

THIS was a bill filed by the National Bank of Rondout, New York, in the Circuit Court of the United States for the District of South Carolina, September 26, 1890, against Thomas R. McGahan, D. R. Smith, and E. P. Smith, citizens of South Carolina.

The bill alleged that on November 30, 1883, Walter B. Crane was seized and possessed in fee of all the undivided three-fourths of certain described parcels of land in Williamsburg and Georgetown Counties, South Carolina, known as the Longwood plantation and Britton's Ferry; that on that day,

"in order to secure the endorsement by said Walter B. Crane of four certain promissory notes, amounting in the aggregate to twelve thousand dollars, and every renewal and renewals thereof, said notes being made by David R. Smith and Walter B. Crane under the firm name of D. R. Smith & Co., and endorsed by Walter B. Crane," then held by the National Bank of Rondout, Crane and his wife executed a mortgage on the undivided three-fourths interest in and to said tracts of land, which mortgage was recorded in Georgetown County, February 27, and in Williamsburg County, March 6, 1885.

It was further averred that the debt became due in June and July, 1885; that Crane departed this life September 5, 1887, leaving the debt unpaid and leaving his wife surviving him; that in December, 1887, the bank recovered judgment on the notes in the Circuit Court.

The bill then alleged that after the execution of the mortgage, and subsequent to the record thereof, the real estate included therein was sold by the United States marshal for the District of South Carolina by virtue of certain executions in his hands, and conveyance made to Thomas R. McGahan of "all the right, title, and interest of said firm of D. R. Smith & Co., a firm composed of D. R. Smith and W. B. Crane, and of D. R. Smith individually;" that McGahan took possession and leased the property to Elizabeth P. Smith, the wife of D. R. Smith; that the lands were timber lands of great value because of the timber thereon, and that McGahan and those under him were cutting down and removing the timber, thus committing waste and destroying the value of the security.

The prayer of the bill was that the defendants "may set forth and discover the claim under which they are in possession of said lands and how the same was acquired and upon what facts it is based; that they may be enjoined under the order of this court from committing further waste on said lands, and especially from cutting down and removing any timber from said lands; that they may set forth and discover the amount and number and value of the trees cut by them or any of them or by their authority since the said Thomas R. McGahan came into control or possession thereof or by any

of them under his authority; that they account to the court for the said value; that they be permitted a reasonable time within which to redeem the said mortgage, if perchance it shall appear that they or any of them have the equity of redemption thereof, and that, failing so to do, on a day fixed by your honors, the equity of redemption be barred and the said property be sold and the proceeds of sale applied to the debt of the said bank, with all interest accrued and to accrue thereon; and for such other and further relief in the premises as to your honors may seem meet."

The defence set up in the joint answer of Thomas R. McGahan, D. R. Smith, and E. P. Smith, his wife, was that the lands mentioned in the bill were agreed to be purchased and held as partnership property by D. R. Smith & Company, under articles of copartnership entered into August 30, 1869, by George North, Walter B. Crane, Edward Tompkins, and D. R. Smith, to be used for agricultural purposes and for the manufacture of lumber; that machinery was purchased and a large saw mill erected and other improvements put upon the premises by the copartnership; that thereafter the interest of North and Tompkins in the copartnership was purchased by Crane, who, with the defendant D. R. Smith, continued the business under the firm name of D. R. Smith & Company; that the premises were in the notorious possession of Smith as resident copartner, as and for copartnership property, and that complainant knew or had means of knowledge that it was such; that the mortgage was executed without the knowledge or consent of Smith, and the property so mortgaged was subject to the rights of creditors of the copartnership. And the answer averred that under and by virtue of writs of execution, dated the 28th of April, 1885, on judgments recovered against D. R. Smith & Co. and D. R. Smith individually, the property described in the bill of complaint " was levied upon and sold by said marshal at public outcry, on the 7th day of September, A.D. 1885, to the defendant, Thomas R. McGahan, for the sum of $3850, he being at that price the highest bidder for the same, and a deed of conveyance, dated the said 7th day of September, 1885, was thereafter duly executed by said

marshal to the defendant, Thomas R. McGahan; that the defendant, Elizabeth P. Smith, is now in possession of said premises, under a lease from said Thomas R. McGahan, and carrying thereon the business of manufacturing lumber, and for that purpose has used such timber as was necessary for said purpose. . . .

"And the defendant, Thomas R. McGahan, further answering, alleges that by virtue of said sale and purchase as aforesaid, he became and is the owner of the premises described in said mortgage, and that the said premises having by the terms of the articles of copartnership been held as and for copartnership property were first liable to copartnership debts in priority to the individual interest of the copartners therein, and that by virtue of the sale and his purchase as aforesaid, he is entitled to hold and enjoy the same free from the lien of said mortgage."

At the hearing, on pleadings and proofs, the following matters appeared:

On May 6, 1869, A. W. Dozier conveyed to George North three several tracts of contiguous land, containing in the aggregate five thousand six hundred and twenty acres, situated in the county of Williamsburg in the State of South Carolina, and known as the Longwood plantation, and on June 6, 1869, C. W. Martin conveyed to North a tract of land containing five hundred acres, situated in Williamsburg and Georgetown Counties, known as Britton's Ferry. North, in consideration of $2500, conveyed an undivided one-fourth part of the lands, on July 2, 1869, to Walter B. Crane, and on the same day and for the same consideration conveyed to Edward Tompkins an undivided one-fourth part thereof. Apparently D. R. Smith became the purchaser also of an undivided one-fourth of the lands, and he executed a mortgage of all of his interest therein to Crane and also a like mortgage to Tompkins, August 28, 1869. These mortgages recited that Crane and Tompkins had each lent to Smith the sum of $1322, to enable him to purchase, take, and hold an undivided one-fourth part of the premises, and that it was agreed by and between the said parties that the money so loaned as aforesaid and such as might thereafter

be advanced by Crane and Tompkins to Smith should be a lien and charge upon the interest of Smith in the land and premises thereinafter mentioned and described, and the buildings and erections thereon or which should be thereafter erected.

The record disclosed an undated agreement signed by North, Crane, Tompkins, and Smith, reciting that whereas the parties, described as all of Rondout, New York, had purchased in joint copartnership a plantation on the Great Pedee River in Williamsburg County, State of South Carolina, known as Longwood, and also another plantation, partly in said county and partly in Georgetown County, known as Britton's Ferry, and whereas it was in contemplation to erect a saw mill or mills or other machinery for manufacturing, sawing, and preparing of timber for market now growing upon said plantations or otherwise obtained, and also to cultivate said plantations for the production of grain, cotton, etc., it was agreed that Smith was to take charge of the plantations and superintend the erection of such saw mills as might be necessary and in accordance with the consent of the mutual partners, and that said Smith was to superintend the preparation of the lumber for market and its sale, and to conduct the plantations and lumber business, etc., and whereas Smith was unable to advance or pay his proportion of the capital to make the purchase and develop the same, Crane and Tompkins agreed to advance to Smith $5000 in equal proportions from time to time, and Smith agreed that he would devote his entire time and attention to the partnership and to mortgage his undivided one-fourth interest to Crane and Tompkins for their security, and the agreement concluded: " The business of this firm to be conducted in the name and firm of David R. Smith & Co., and it is understood by the above parties named in this contract that the above agreement is to be in full force and virtue for the term of five years from the first day of May, A.D. 1869, unless otherwise ordered and determined by the mutual consent of the parties concerned."

August 30, 1869, a copartnership agreement was entered into between North, Crane, Tompkins, and Smith, in which North, Crane, and Tompkins are described as of Rondout,

New York, and Smith as of Longwood, South Carolina. This agreement recited that the parties had agreed to become partners together in the cultivation of two plantations on the Great Pedee River in the counties of Williamsburg and Georgetown, known as Longwood and Britton's Ferry, and also in the manufacture and sale of lumber and timber then growing upon said plantations or otherwise purchased or obtained. It was stated, among other things, that Smith, as the active and resident partner, was authorized "to use and sign the name of the firm in all transactions necessary to conduct the business of said copartnership;" that the copartnership was to continue for five years from the first day of May, 1869; and reference was made to an agreement with D. R. Smith bearing date May 1, 1869.

On November 28, 1871, North, in consideration of $4000, conveyed to Tompkins an undivided one-eighth interest in said lands, and on the same day and for the same consideration conveyed an undivided one-eighth to Crane. On December 29, 1871, North, Crane, and Tompkins executed an agreement to the effect that North thereby sold to Crane and Tompkins all his right, title, claim, and interest in the copartnership rights or property for the sum of $8000, North being indemnified as against the liabilities of the firm.

A memorandum was attached to the copartnership agreement dated October 1, 1874, signed by Crane, Tompkins, and Smith, to the effect that Crane and Tompkins had purchased the entire interest of North in the business, and agreeing to continue the same; also a memorandum under date of March 1, 1877, reciting that Tompkins having disposed of his interest to Crane in the agreement, Crane and Smith agree to continue the business until April 1, 1878. On that date, March 1, 1877, an instrument was executed by Crane and Tompkins under seal and witnessed by Smith, apparently intended, in consideration of a deed of certain lots at Rondout, New York, to acknowledge the transfer to Crane of Tompkins' "whole and entire interest in all and every description of property now held in the name and firm of D. R. Smith & Co., located in South Carolina, with lumber and book ac-

counts at Rondout, New York;" and Crane thereby released Tompkins from all debts, dues, and demands owed by D. R. Smith & Co., except seven notes in the National Bank of Rondout, which it was agreed should be continued from one to two years, if required, Tompkins and Crane holding themselves responsible for the notes, but Crane agreeing to pay the notes and indemnify Tompkins from all loss incurred from their extension. Crane and Tompkins also agreed to the dissolution of the firm from date. On April 24, 1877, Tompkins, in consideration of $1322 paid to him by Crane, assigned to Crane the mortgage made by Smith to Tompkins, August 28, 1869.

On November 30, 1883, Crane conveyed to the National Bank of Rondout an undivided three-fourths interest of all the tracts of land known as Longwood and as Britton's Ferry, in consideration of the sum of $12,000, which deed recited: "This grant is intended as a security for the payment of the four certain promissory notes, amounting in the aggregate to twelve thousand dollars, or the renewal or renewals of them, or either, or any of them, together with the lawful discount or interest thereon, said notes being made by David R. Smith and Walter B. Crane, under their firm name of D. R. Smith & Co., and endorsed by Walter B. Crane and Henry M. Crane, and payable at the National Bank of Rondout." In case of default in payment it was provided that the property might be sold by the parties, and that after payment, from the proceeds, of the indebtedness and costs, the overplus, if any, should be paid, on demand, to Crane, his heirs or assigns. The evidence tended to establish other facts referred to by the Circuit Court.

The Circuit Court, Judge Bond presiding, in its opinion or decree found that Walter B. Crane, the mortgagor, owned the undivided three-fourths of the property described in the bill; "that he mortgaged the same to the National Bank of Rondout in November, 1883, to secure $12,000 of promissory notes, made by David R. Smith and Walter B. Crane, under the firm name of D. R. Smith & Co., and endorsed by Walter B. Crane and Henry M. Crane, and payable at the National

Bank of Rondout; that this mortgage was held by the National Bank of Rondout in its possession and was, at the request of Walter B. Crane, one of the copartners, withheld from registry in South Carolina from the date of its delivery in November, 1883, until the 27th February, 1885, when it was duly recorded in the office of the clerk of the Court of Common Pleas of Georgetown County, South Carolina, and the 6th day of March, 1885, when it was recorded in the office of the register of mesne conveyances for Williamsburg County, in said State; that the notes recited in the mortgage were not paid at maturity and were from time to time re- newed, until the 6th, 17th, and 29th days of June and the 3d day of July, 1885, respectively, . . . at the expiration of which times of payment they each became due and since said dates have remained unpaid; that on the 27th April, 1885, certain judgments were recovered in the Circuit Court for the District of South Carolina against D. R. Smith & Co., upon the default of D. R. Smith, the only one of the de- fendants who was served, and executions were lodged to bind the property of said firm and the individual property of D. R. Smith, but not the separate property of Walter B. Crane; that under said judgments and executions the marshal of this court, at Kingstree, in the county of Williamsburg, on the 7th day of September, 1885, sold the interest of the said D. R. Smith & Company, and the interest of D. R. Smith indi- vidually in the real estate of D. R. Smith & Co., for the sum of $3850, to Thomas R. McGahan, one of the ·defendants in this suit, and on the same day executed and delivered to him as purchaser, a deed of conveyance of the property described in the deed, which is the same property, the three-fourths interest in which was mortgaged by Walter B. Crane to the National Bank of Rondout; that the said Thomas R. Mc- Gahan, assuming to be the owner of the entire property, shortly after the said sale to him executed to the defendant, Mrs. Elizabeth P. Smith, wife of the above-named D. R. Smith, a lease of said property, including the mills, machin- ery, and personal property connected therewith; that since then the said D. R. Smith, as agent for his wife, has been

using the said mill property for their own purposes, and has been carrying on an extensive business in cutting and shipping lumber; that the title to the three undivided one-fourths in the fee of said real estate was conveyed by regular deed to Walter B. Crane, the mortgagor, who, with his wife concurring, conveyed them to the National Bank of Rondout to secure the copartnership debt of D. R. Smith & Co.; that the title deeds to Crane show no trust of any kind qualifying Crane's title; that there was no evidence to show any special trust which would restrict or qualify Crane's right to make an absolute conveyance of his undivided three-fourths interest in said real estate and the improvements thereon, of the nature of fixtures or appurtenances thereto belonging; that there was satisfying evidence that D. R. Smith knew that the mortgage had been given as security for the debt of D. R. Smith & Co.; that he knew that the notes were renewed, and that he by his silence entirely acquiesced in the act of Crane in giving the mortgage to the bank."

The Circuit Court also said:

" It is unnecessary to consider the question whether three-fourths in the land and fixtures appurtenant to the land were or were not partnership property, and whether, as such, were first liable to copartnership debts in priority to the individual interests of the copartners therein, because, assuming this to have been the nature of the property, the mortgage of the partnership assets by one copartner for the benefit of the partnership without the assent of the other partner would in the absence of fraud (which is not here suggested) be undoubtedly valid as a security to a particular creditor to whom it was mortgaged; *a fortiori*, if made with the assent, express or implied, of the other partner, who, as in the case of D. R. Smith, knew of the mortgage, did not object, and who participated in the benefit of the extension of the debt which the firm of D. R. Smith & Co. obtained from the bank.

" The title which Thomas R. McGahan, as purchaser, acquired under the sale and conveyance in September, 1885, made by the marshal under the execution against the firm of D. R. Smith & Co. and the individual interest of D. R. Smith,

could be no better or higher than that which the firm had or could have claimed in the property so sold and conveyed.  As D. R. Smith & Co. and D. R. Smith could not have claimed to hold the property in derogation of the right to the three-fourths interest therein of the National Bank of Rondout under the mortgage given to it in 1883 to secure the debt of D. R. Smith & Co., so the defendant Thomas R. McGahan cannot claim against the right of the bank to three undivided fourths in said land and improvements and fixtures."

The court entered a decree annulling the lease made by Mc-Gahan to E. P. Smith, and directing an account for three-fourths of the rents and profits from September 7, 1885, when McGahan assumed the ownership and possession of the whole property, and for any waste which might have been permitted between that date and the date of the accounting; foreclosing the equity of redemption of Walter B. Crane and directing a sale of the property, the proceeds after payment of costs to be paid to complainant to be credited on the debt secured by the mortgage.

From this decree defendants prosecuted an appeal.

*Mr. J. N. Nathans* (with whom was *Mr. Samuel Lord* on the brief) for appellants.

I. The court should have held that the conduct of the mortgagor in withholding the mortgage from record under an agreement with the mortgagor, and for the purpose of giving the firm a fictitious credit was void as against the creditors who had been thereby misled.  This defence to the mortgage was not made in the answer, though pressed upon the court at the hearing, and should not be denied to the appellants, if tenable, because of this failure so to make it.

Under section 1776 of the General Statutes of South Carolina, a mortgage of real or personal estate shall be valid so as to affect from the time of delivery or execution the rights of subsequent creditors or purchasers for valuable consideration without notice, only when recorded within forty days from the time of such delivery or execution, in the office of the

register of mesne conveyances of the county where the property affected thereby is situated in the case of real estate. . . . Provided, nevertheless, that the above-mentioned deeds or instruments in writing if recorded subsequent to the expiration of said period of forty days, shall be valid to affect the rights of subsequent creditors and purchasers for valuable consideration without notice only from the date of such record.

In *King* v. *Fraser*, 23 S. C. 543, the Supreme Court of South Carolina construing this section, held that by subsequent creditors were meant subsequent lien creditors, and that as against general creditors who became such between the execution of and recording the mortgage was entitled to priority. This does not, however, affect the question of whether the mortgage was valid in its inception, which must be determined on the principles of the common law. At common law it would be an obvious fraud to agree to withhold a mortgage from record to secure a continuing credit for the mortgagor with the public, and record it when the creditors, whose confidence was thus betrayed, would be defeated in recovery of their debts by the interposition of the mortgage.

II. By the articles of copartnership the copartners expressly agree to become copartners in its purchase and cultivation, and in the manufacture and sale of the lumber and timber growing upon it, and provide that the capital to be furnished by them shall be applied to the payment of the purchase money of the land. It was necessary for the ordinary operation of the partnership business, and was actually so employed from the time of the purchase until it was sold under judgment recovered against the partnership and under which McGahan purchased. The improvements consisting of machinery and buildings erected and put upon the lands were paid for with copartnership capital and profits. It is true, conveyances of the legal title were made to the several parties, according to their respective interests as copartners, but though at law this made them tenants in common, in equity the property is deemed copartnership property, and the partnership is the

equitable owner thereof. *Hoxie* v. *Carr*, 1 Sumner, 173; *His-cox* v. *Phelps*, 49 N. Y. 97; *Cavender* v. *Bulteel*, L. R. 9 Ch. 79.

In this case this results not from any constructive trusts arising from the use of the copartnership assets in the purchase of the land, but is the very basis of the association of the co-partnership resting on contract and not implication. That the land was the property of the partnership was known to the bank, and there can be no pretence that it was misled as to the tenure by which the property was held, by the fact that upon the records the legal title stood in the names of the several partners. The continued use and possession of the property by the firm would alone have been constructive notice of the equitable right of the copartnership, (Jones on Mort. § 120,) and this is certainly the law in South Carolina. *Massey* v. *McIlvaine*, 2 Hill Eq. (S. C.) 42; *Stroman* v. *Varn*, 19 S. C. 307.

In South Carolina the general rule is, that one copartner has no power to bind his copartners by deed or other instrument requiring seal. *Stroman* v. *Varn*, 19 S. C. 307; *Sibley* v. *Young*, 26 S. C. 415; *Hull* v. *Young*, 30 S. C. 121.

III. The court clearly erred in holding that it was unnecessary to consider the question whether the three-fourths of the land and fixtures appurtenant thereto were or were not partnership property. If it was partnership property, then the legal title in Crane was held in trust for the partnership, and his individual interest was subordinate to that of the partnership and distinct from it. This individual interest could be sold or mortgaged by him for a copartnership debt if his copartner opposed and protested against a mortgage by the firm of the firm's interest, or for his individual debt. In this case not only the circumstances under which it was given, but the provisions of the mortgage, show that it was not intended to bind the partnership interest. It was executed by Crane individually, in his own name, and not in the name and as the act of the firm or the other copartners. In *Clark* v. *Houghton*, 12 Gray, 38, it was held that the execution of a mortgage of personal property of a partnership by a partner in his individual name passed no title.

IV. A mortgagee is not entitled to rents and profits unless a lien thereon is given in the mortgage.   Gen. Stats. S. C., § 2299; *Navassa Guano Co.* v. *Richardson*, 26 S. C. 401. The bank had no better right to the rents and profits as against McGahan than it had against Crane.   *Hardin* v. *Hardin*, 34 S. C. 77, 80, 81; *Teal* v. *Walker*, 111 U. S. 242.

McGahan purchased the equity of redemption on the 7th of September, 1885.   Not until the 29th of September, 1889, did complainant take any action whatsoever under his mortgage. No receiver was applied for, and even under the law as unmodified by statute in South Carolina, the Circuit Court erred in so decreeing an account of rents and profits to be taken in favor of the bank as against McGahan.   If the mortgaged land was not copartnership property McGahan should be liable only to the heirs of Crane, who are not parties to the proceedings.

V. Waste is an injury to the inheritance, and the commission thereof creates a liability only to the owner of the inheritance in remainder and reversion.

Waste, in short, may be defined to be whatever does a lasting damage to the freehold or inheritance, and tends to the permanent loss of the owner in fee, or to destroy or lessen the value of the inheritance.   1 Washburn on Real Property, 110; 4 Kent Com. 76.

A mortgagee in South Carolina has no estate whatsoever, but simply a lien.   *Hardin* v. *Hardin, supra.*

VI. The mortgage was given to secure the endorsement of Crane on the notes of D. R. Smith & Co., as admitted in the complainant's bill, and there is' no evidence that Crane or his estate is insolvent.   If even an action on the case in the nature of waste would lie in favor of a mortgagee it should appear that the mortgagor was insolvent and the security insufficient.

*Mr. Theodore G. Barker* for appellee.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

It is argued that· the Circuit Court should have held that the withholding of the mortgage from record invalidated it as against the creditors of the firm, but no such defence to the mortgage was set up in the answer, and there having been no issue thereon below, it cannot be made in the first instance on appeal. · The decree of the Circuit Court refers to no such defence, and it is now too late to raise it. Nor do we find anything from which to conclude that the firm was given a fictitious credit by the conduct of Crane in this particular, or that the withholding of the mortgage from record amounted to a fraud upon creditors of which these defendants could complain. McGahan was not a creditor, but claimed to have been a purchaser after the mortgage had been recorded; D. R. Smith was not a creditor and was not misled; and there is no evidence in the record that any creditor dealt with D. R. Smith & Company on the faith that the three-fourths interest in the lands standing in Crane's name was partnership real estate. The error assigned in this regard is untenable.

The Circuit Judge was of opinion that Crane held the undivided three-fourths of the lands in question in individual ownership in fee, unaffected by any trust, and that it was competent for him to make an absolute conveyance thereof in virtue of· such ownership. But, although the deeds were made to North, Crane, Tompkins, and Smith as individuals, and the purchases were made in severalty, and they held, and Crane and Smith subsequently held, as tenants in common, yet if an equity resulted to firm creditors because the purchases were made in furtherance of the joint enterprise, and the lands were devoted to its use, it seems to us nevertheless quite clear that the mortgage by Crane·of the three-fourths standing in his name to secure a partnership debt was valid, and could be enforced against these defendants.

The settled rule in this country is, that' where a deed is executed on behalf of a firm by one partner, the other partner will be bound if there be either a previous parol authority, ·or a subsequent parol adoption of the act; and that ratification may be inferred from the presence of the other partner

at the execution and delivery, or from his acting under it or taking the benefits of it with knowledge. 3 Kent, *48; *Cady* v. *Shepherd,* 11 Pick. 400, 405, 406; *Peine* v. *Weber,* 47 Illinois, 41; *Frost* v. *Wolf,* 77 Texas, 455; *Schmertz* v. *Shreeve,* 62 Penn. St. 457; *Wilson* v. *Hunter,* 14 Wisconsin, 683; *Rumery* v. *McCulloch,* 54 Wisconsin, 565; *Pike* v. *Bacon,* 21 Maine, 280; *Russell* v. *Annable,* 109 Mass. 72; *Gunter* v. *Williams,* 40 Alabama, 561; *Sullivan* v. *Smith,* 15 Nebraska, 476.

This is the accepted doctrine in New York: *Smith* v. *Kerr,* 3 Comst. (3 N. Y.) 144; *Graser* v. *Stellwagen,* 25 N. Y. 315; *Van Brunt* v. *Applegate,* 44 N. Y. 544; and in South Carolina: *Stroman* v. *Varn,* 19 S. C. 307; *Salinas* v. *Bennett,* 33 S. C. 285.

In *Stroman* v. *Varn,* the Supreme Court of South Carolina laid down the general rule that one partner might bind his copartners by deed if the others were present and authorized it, or if authority to do so was fairly inferable from the evidence of their conduct and the course of business, and it was held, where there were four partners in a sawmill, two of whom owned the land, and one of the others mortgaged it in the name of the four and signed the firm name, that the mortgage was a valid lien on the land, the two owners having received the consideration and in many ways acknowledged and ratified the mortgage, and that a purchaser of the interest of one of the owners in both land and partnership after record of the mortgage was bound by its lien.

In *Van Brunt* v. *Applegate* it was held that a conveyance by one partner having the legal title to one-half of certain real estate, (the other half being in the other partner,) the whole of which was in equity partnership property, to a creditor of the firm in payment of a partnership debt, vested good title to such undivided half in his grantee, notwithstanding it was executed without the knowledge or consent of the other partner, the firm was insolvent, and its effect was to give a preference to the grantee. The argument that a partner holding the legal title of one-half held a moiety of it for himself and a moiety for his copartner was rejected, and it

was decided that a partner holding the legal title for the firm has the same power over it as over firm personalty, and that his conveyance for firm purposes passes the title free of the firm's equities; that if he were a trustee as to his copartner the separate deeds of both partners would leave one-half the tract unconveyed, but that a joint deed was not necessary to convey the firm title.

In this case the title to three-fourths of the lands stood in Crane. It is said that the legal title to Tompkins' three-eighths (one-eighth having been conveyed by North to Tompkins and one-eighth to Crane) was never conveyed to Crane, but we regard the case made as sufficient in this respect. The bill alleged that Crane was "seized and possessed in fee of all the undivided three-fourths of all those tracts and parcels of land," and this averment was not denied in the answer, while appellants admit that Crane "had the right to compel Tompkins to make a conveyance of the legal title." No question arises as to a conveyance in the name of the firm, as, in order to apply this three-fourths in security or payment of partnership liabilities, a conveyance by Crane in his own name was required, and the mortgage was given by Crane accordingly to secure partnership notes and their renewals, as appeared on the face of the mortgage. The character of the transaction was not changed because Crane may have desired to protect his own endorsements made for the benefit of the firm, nor by the fact that the mortgage, pursuing the legal title, happened to provide that any surplus after sale should be paid to Crane, "his heirs or assigns." Moreover, Smith was not called as a witness, and although the testimony of the president of the bank tended to show that Smith objected to the giving of a mortgage in the name of D. R. Smith & Company, we concur with the finding of the Circuit Judge that Smith knew of the execution by Crane of the mortgage of the three-fourths, which as between them belonged to Crane, and accepted the benefits of the renewals secured thereby without objection. The necessary conclusion is that the partnership indebtedness to the bank was properly secured by the mortgage as against other firm creditors, even if

Crane's title could under some circumstances have been subjected to an equity in favor of the firm.

The bank's rights could not be divested by sale under judgments against D. R. Smith or D. R. Smith & Co., whether the property was held in individual ownership or affected by an equity which passed to the bank in security of firm indebtedness.

Such being the situation, McGahan and his lessee could not claim to occupy under McGahan's purchase the position of a mortgagor in possession, and, indeed, that is not appellants' contention, which, on the contrary, denied the validity of the mortgage altogether. And since they proceeded to cut and sell the timber from the mortgaged premises from September 7, 1885, to the date of the decree in derogation of the rights of both the bank and of Crane, the Circuit Court correctly held them to an accountability for three-fourths of the proceeds thus realized.

As between mortgagor and mortgagee, whether the mortgage be regarded as passing the legal estate or as giving merely a lien for the debt, the right of the mortgagee to be protected from the impairment of his security is alike recognized: Jones on Mort. § 684; *Brady* v. *Waldron*, 2 Johns. Ch. 148; *Nelson* v. *Pinegar*, 30 Illinois, 473; but the mortgagee cannot recover for waste in the cutting of timber from the mortgaged land by the mortgagor unless the severance be wrongful: *Searle* v. *Sawyer*, 127 Mass. 491. So it may be conceded that the mortgagee is not entitled to rents and profits unless a lien thereon is reserved in the mortgage, *Hardin* v. *Hardin*, 34 S. C. 77, 80, 81; and that although the mortgagee may have the right to take possession upon condition broken, if he does not exercise the right he cannot claim the rents, *Teal* v. *Walker*, 111 U. S. 242. But the accounting was not awarded by the Circuit Court as resulting from the application of the doctrine of waste or the right to rents and profits as between mortgagor and mortgagee, but rested on the ground that McGahan acquired nothing more under the sale and conveyance to him than Smith's one-fourth of the property, and that his taking possession of the entire lands

and converting the timber thereon entitled the bank to an account for three-fourths of the property so converted.

If McGahan was accorded the rights of a tenant in common, he could not complain at being subjected to the obligations of that relation. If one exclude his cotenant under a claim of exclusive right or otherwise, the cotenant is entitled to compensation to the extent of the use of which he has been improperly deprived, and it is settled law in South Carolina that the occupying tenant is chargeable with what he has received in excess of his just proportion, and is liable to account to his cotenant for the rents and profits of so much of the common property as he has occupied and used in excess of his share. *Thompson* v. *Bostick*, McMullan Eq. 75, 78; *Hancock* v. *Day*, McMullan Eq. 69, 72; *Holt* v. *Robertson*, McMullan Eq. 475; *Jones* v. *Massey*, 14 S. C. 292; *Scaife* v. *Thomson*, 15 S. C. 337; *Pearson* v. *Carlton*, 18 S. C. 47. The character of McGahan's possession was hostile, and in any view, on general principles of equity, the accounting was properly decreed.

But it is objected that the decree was erroneous in this particular, because the heirs of Crane were not parties to the suit. By the 47th rule in equity, in all cases where it appears to the court that persons who might otherwise be deemed necessary or proper parties to the suit cannot be made parties by reason of their being out of the jurisdiction of the court, or because their joinder would oust the jurisdiction of the court as to the parties before the court, the court may in its discretion proceed in the cause without making such persons parties, but in such cases the decree is without prejudice to the rights of the absent party. In this case the heirs of Walter B. Crane were not made parties to the bill presumably because jurisdiction would thereby be ousted, but no objection was made to proceeding in their absence, and so far as these defendants are concerned, complainant, if otherwise entitled, was properly allowed to go to a decree of sale and foreclosure as to them, as claiming the equity of redemption or title to that part of the real estate which stood in the name of Crane. And as the decree was operative to this extent, we think it may be sustained in respect of the accounting for the conversion of that

which rendered the security valuable. It is admitted that Crane and his wife, who alone survives him, executed the mortgage, and that the indebtedness is unpaid, while it is evident upon this record that the firm is insolvent.

Under these circumstances we are unable to conclude that appellants are entitled to insist upon an objection in this court, to sustain which would curtail the relief to which appellee was entitled as against them or overthrow the jurisdiction of the Circuit Court. *Keller* v. *Ashford,* 133 U. S. 610, 626, and cases cited. *Decree affirmed.*