11889

WILLIAMS v. BRUTON *ET AL.*

(131 S. E., 18)

1. APPEAL AND ERROR—REPORT OF REFEREE, ADOPTED BY CIRCUIT JUDGE, HELD WITHIN RULE THAT CONCURRENT FINDINGS WILL NOT BE DISTURBED, UNLESS CONTRARY TO EVIDENCE OR CONTROLLED BY ERROR OF LAW.—Report of Referee as to amount of timber cut and removed before certain dates and stumpage value of timber, adopted by Circuit Judge, *held* to fall within rule that concurrent findings of fact of Referee and Circuit Judge will not be disturbed, unless shown to be contrary to clear preponderance of evidence or controlled or influenced by error of law.

2. TENANCY IN COMMON—FINDING THAT MEASURE OF DAMAGES SUSTAINED BY PLAINTIFF FOR TAKING OF TIMBER BY GRANTEE OF CO-TENANT WAS STUMPAGE VALUE HELD ERRONEOUS.—Concurrent legal conclusions of Referee and Circuit Judge and findings of fact thereon predicated, that the grantee of right to build railroad and

cut and remove cotenant's share of timber was liable to account to other cotenant only for stumpage value of lumber converted, *held* erroneous.

3. TENANCY IN COMMON—UNAUTHORIZED BUILDING OF RAILROAD AND SKIDDER FOR REMOVING TIMBER MUST BE ACCOUNTED FOR IN DAMAGES FOR LOSS OF TIMBER TO PROPERTY.—Unauthorized act of building and operating railroad and skidders in removing timber, under grant from plaintiff's cotenant only, must be accounted for as to loss of plaintiff's interest in timber and other damage done to property by railroad and skidders.

4. TENANCY IN COMMON—MEASURE OF DAMAGES FOR REMOVAL OF TIMBER BY GRANTEE UNDER HONEST MISTAKE OF RIGHT IS VALUE OF TIMBER ON STUMP.—Grantee, removing plaintiff's timber by means of railroad and skidder without authority, except under grant given by plaintiff's cotenant and former grant to remove timber from whole property by use of horses, *held* to have probably acted under honest mistake of right; hence measure of damages is value of timber on stump, with interest from date of appropriation.

5. TRESPASS—INTEREST ASCERTAINED FROM MEAN DATE OF APPROPRIATION OF TIMBER.—Interest on amount allowed for misappropriation of timber will be ascertained from average or mean date of appropriation.

6. TENANCY IN COMMON—GRANTEE OF COTENANT'S TIMBER RIGHTS IS UNDER OBLIGATION TO ACCOUNT TO COTENANT.—Grantee of timber rights by plaintiff's cotenant *held* under obligation to account to plaintiff for timber appropriated, as cotenant, and measure of damages would not be stumpage value of timber removed.

7. TENANCY IN COMMON—OCCUPYING COTENANT, APPROPRIATING TIMBER ON COMMON PROPERTY, IS LIABLE TO OTHER COTENANT FOR FAIR STUMPAGE VALUE, AND PROFITS REALIZED.—Where occupying cotenant appropriates by cutting, removing, and selling more than his proportion of timber on common property, he is liable to other cotenant for fair stumpage value of timber appropriated, and, in addition, for any profits actually realized.

8. TENANCY IN COMMON—GRANTEE OF COTENANT, WHO MISAPPROPRIATES TIMBER, CHARGED WITH PROFITS WHICH COULD BE MADE BY MAN OF ORDINARY BUSINESS CAPACITY, IN ABSENCE OF SHOWING THAT NO PROFITS ACCRUED.—In absence of showing by grantee of one cotenant, who had appropriated timber of other cotenant, that no profits had actually accrued from conversion, he cannot complain if he is charged with such profits as evidence establishes could have been made by man of ordinary business skill and capacity in exercise of due diligence.

9. APPEAL AND ERROR—SUPREME COURT WILL DISPOSE OF QUESTION SQUARELY PRESENTED ON SECOND APPEAL, ALTHOUGH IT IS ADVERSE TO DETERMINING IT AS MATTER OF FIRST INSTANCE.—Supreme Court is adverse to determining as matter of first instance what profit was made by grantee of one cotenant on timber appropriated from other cotenant, where data furnished is meager, yet where case has twice been before Circuit Court and Supreme Court, and question is squarely presented, Supreme Court will dispose of it.

10. APPEAL AND ERROR—SUPREME COURT WILL CUT IN HALF FIGURES SHOWING PROFIT OF $15.00 PER M COULD HAVE ·BEEN MADE ON TIMBER MISAPPROPRIATED BY COTENANT.—Where evidence tends to ·establish that grantee of cotenant appropriating timber of other cotenant could have made profit of $15.00 per M during 1919, but evidence does not establish that such profit could have been realized in 1917 and 1918, and, in view of common knowledge that paper profits from timber operations are illusory, Supreme Court will cut such figure in half in determinning on what basis grantee is liable for misappropriation of tmber.

Before SHIPP, J., Richland, Spring Term, 1923. Modified and remanded with directions.

Action by Thomas C. Williams against J. C. Bruton and others. From a decree confirming a report of a referee, plaintiff appeals.

*Mr. Halcott P. Green,* for appellant, cites: *Timber wrongfully cut; measure of damages:* 128 S. C., 32; 61 S. C., 313; 14 S. C., 292; 1 McM., 81; 39 L. Ed., 403. *Estimate of timber wrongfully cut; records:* 128 S. C., 31. *Case distinguished:* 69 S. C., 364.

*Messrs. Moorman & Moorman* and *Lyles & Lyles,* for respondents, cite: *Findings of fact conclusive on appeal:* 131 S. C., 75; 131 S. C., 101; 126 S. E., 438; 100 S. C., 157. *Cut timber deemed personalty:* 37 Am. Rep., 193; 62 A. S. R., 713; 32 L. R. A., 102; 46 Am. Rep., 34; 32 Cyc., 673. *Measure of damages:* 69 S. C., 364; 61 S. C., 292.

December 22, 1925.

The opinion of the Court was delivered by MR. JUSTICE MARION.

This is the second appeal in this case. The facts out of which the controversy arises· are set out in the decision of this Court on the first appeal, reported in 121 S. C., 30; 113 S. E., 319. A careful reading of that opinion, with ·particular reference to the facts therein stated, will assist to a better understanding of the points here decided.

On the former appeal a decree of Hon. H. F. Rice, Circuit Judge, was sustained. One of the conclusions reached by Judge Rice was that the case should be recommitted to the Master or Referee to determine, in accordance with the principles laid down in his decree, the amount of damages the plaintiff, Williams, was entitled to recover. The case went back to the Referee, and in due course his report was filed. That report was by formal order confirmed by Hon. S. W. G. Shipp, Circuit Judge, and from that decree this appeal is taken.

The plaintiff, Williams, and G. A. Blackburn owned, as tenants in common, the Lykes place. In 1916, ·Blackburn granted to the defendant Bruton the right to build a railroad on the land and to cut and remove Blackburn's portion of the timber. At that time one Carrison held an outstanding timber contract, expiring January 1, 1917, granted by Williams and Blackburn's predecessors in title, under which he had the right to cut the timber on all of the Lykes place and to remove by teams and trainways, but not by means of a railroad and skidder. This Carrison contract was purchased by Bruton, who entered upon the land, built a railroad thereon, and proceeded to cut and remove timber from the whole place. On September 20, 1919, this action was brought by Williams to restrain defendant from cutting and removing timber and for damages. Shortly before this action was commenced (the exact date not appearing), this land, the Lykes place, was partitioned in kind between the plaintiff, Williams, and the other owners. The damages which plaintiff seeks to recover are "for the cutting and removal of timber" on and from, "and damages to, that por-

tion of the 'Lykes place' allotted and released to him, and
for operating the railroad over same."

The Referee found and concluded: (1) That the de-
fendant Bruton had cut 664,000 feet of timber on Williams'
part of the land. (2) That 200,000 feet of that timber
had been cut by Bruton prior to January 1, 1917, when
Bruton had, as transferee of the outstanding Carrison con-
tract, the right to cut all the timber on the whole of the
Lykes place, even if he did not have the right to build a
railroad and to remove the timber by means of the railroad
and skidder; that, as soon as the trees (this 200,000 feet)
were cut down by Bruton, they became his personal prop-
erty and ceased to be a part of the real estate; and that,
therefore, the cutting of the trees prior to January 1, 1917,
did not damage any property of Williams, "in that they had
become the personal property of Bruton and never were the
property of Williams." (3) That Bruton was liable to
account to the plaintiff for 464,000 feet of timber. (4)
That the legal measure of damages applicable was the
stumpage value of the timber. (5) That the stumpage
value of the timber was $2.50 per M and that Williams was
entitled on that account to damages in the sum of $1,183.20,
with interest (not calculated and from a date not fixed). (6)
That, for the breaking and destruction of a wire fence by
the felling of trees and the building of the railroad, Wil-
liams was entitled to recover as an additional item of dam-
age the sum of $350.

By exceptions, which are sufficient for the purpose, the
plaintiff questions the correctness and validity of all of the
foregoing findings and conclusions.

Under the well-settled rule concurrent findings of
fact of the Referee and the Circuit Judge will not
be disturbed, unless shown to be contrary to the clear
preponderance of the evidence, or controlled or influenced
by error of law. *Forrester v. Moon,* 100 S. C., 157; 84
S. E., 532. *Badder v. Saleeby,* 131 S. C., 101; 126 S. E.,

438.   The concurrent findings of fact here which we hold to fall within that rule are:    (1) That 664,000 feet of timber were cut and removed from the plaintiff's portion of the land; (2) that 200,000 feet of that were cut and removed before January 1, 1917; (3) that the stumpage value of the timber was $2.50 per M; and (4) that the amount of damage to fence, etc., was $350.

But we think the concurrent legal conclusions of the Referee and Circuit Judge, and the findings of fact thereon predicated, (1) that the defendant Bruton was not liable to account to the plaintiff for the 200,000 feet of timber cut and removed from plaintiff's portion of the land before January 1, 1917, and (2) that the measure of the damage sustained by the plaintiff on account of the cutting and removal of the 464,000 feet of timber after January 1, 1917, was the stumpage value, are erroneous.

The theory upon which the first and the foregoing conclusions were rested, viz. that, when timber is actually cut upon land by one who has the right to cut it, it ceases to be a part of the realty and becomes the personal property of the one whose right is exercised in cutting it (32 Cyc., 673), however sound as an abstract proposition, we think inapplicable to the point here involved.   Under the Carrison contract, it is true, Bruton acquired the right to cut the timber on the whole of the Lykes place prior to January 1, 1917; but he did not thereby acquire the right to remove the timber by railroad and skidder.

In the decree, affirmed on the former appeal by this Court, 121 S C., 30; 113 S. E., 319, Judge Rice held:

"Now, it seems to me that the evidence shows beyond a doubt that Bruton could not have removed the said timber off of the Lykes place by teams at a profit.   There is no reason to believe, then, that he would have removed it at all if he had not built his railroad on the property.   So far as Williams was concerned, then, the building of the rail-

road was unauthorized, and caused him to lose his portion of such timber as was removed by Bruton after the railroad was put into operation. The unauthorized act, then, of building and operating a railroad and skidder on the Lykes place was the direct and proximate cause of the loss of a part of the timber interest of Williams on the portion of the Lykes place now set apart to him, and for this Bruton must account, as well as for any other damages done said property of Williams by said railroad and skidder."

Under the foregoing ruling, which is the law of this case, we are clearly of the opinion that the defendant must be held liable for the 200,000 feet of timber cut and removed from Williams' portion of the land prior to January 1, 1917.

Inasmuch, however, as Bruton, in cutting and removing that timber, proceeding under authority of Williams' cotenant, Blackburn, and under claim of paramount right through the Carrison contract, might reasonably be considered to have acted under an honest mistake of right, we are disposed to apply here the measure of damages suggested and applied in *Lewis v. Chemical Co.,* 69 S. C., 364; 48 S. E., 280; 104 Am. St. Rep., 806, to wit, "The value of the timber on the stump and interest from date of appropriation." It appears that Bruton entered the Lykes place with his railroad about May 1, 1916. The average or mean date of the appropriation of the 200,000 feet cut and removed during the 8 months between May 1, 1916, and January 1, 1917, may reasonably be fixed at September 1, 1916. We conclude, therefore, that the plaintiff is entitled to recover the stumpage value of this 200,000 feet at the stumpage value of $2.50 per M fixed by the Referee, or the sum of $500 with interest at the rate of 7 per cent. per annum from September 1, 1916.

The second of the foregoing legal conclusions of the Referee, concurred in by the Circuit Judge, viz. that the measure of Williams' damages on account of the 464,000 feet removed after January 1, 1917, was stumpage

value, should not, we think, be sustained for the following
reasons. In removing timber from the common property
after January 1, 1917, Bruton, as grantee or transferee of
Blackburn's interest in the timber, stood in the shoes of
Blackburn, Williams' cotenant. In so far as the timber was
involved, Williams and Bruton were tenants in common,
and in so for as Williams' timber was appropriated by Bru-
ton, Bruton's obligation to account is that of a cotenant.
In the case of *McGahan v. National Bank,* 156 U. S., 218;
15 S. Ct., 347; 39 L. Ed., 403, a case which went up from
this State, and which involved the question of the exclusive
appropriation and conversion of timber by a tenant in com-
mon, the Court (Fuller, C. J.) said:

"If McGahan was accorded the rights of a tenant in com-
mon, he could not complain at being subjected to the obliga-
tions of that relation. If one exclude his cotenant under a
claim of exclusive right or otherwise, the cotenant is en-
titled to compensation to the extent of the use of which he
has been improperly deprived, and it is settled law in South
Carolina that the occupying tenant is chargeable with what
he has received in excess of his just proportion, and is liable
to account to his cotenant for the rents and profits of so
much of the common property as he has occupied and used
in excess of his share. *Thompson v. Bostick,* McMul. Eq.,
75, 78. *Hancock v. Day,* McMul. Eq., 69, 72; 36 Am.
Dec., 293. *Holt v. Robertson,* McMul. Eq., 475. *Jones
v. Massey,* 14 S. C., 292. *Scaife v. Thomson,* 15 S. C.,
337. *Pearson v. Carlton,* 18 S. C., 47."

See, also, the later South Carolina cases of *Perry v. Jef-
feries,* 61 S. C., 313; 39 S. E., 515, and *Youmans v. You-
mans,* 128 S. C., 32; 121 S. E., 674. The established rule
where one cotenant cultivates more than his proportion of
the tillable lands of the common property is that laid down
in *Jones v. Massey, supra,* as follows:

" *    *    * If he rented the land, he should be charged
with the rents received; and, if he cultivated them himself,

then with the profits actually received from such cultivation, without regard to the skill which he happened to possess as a farmer or his habits as to industry."

But there is an obvious difference between an appropriation for purposes of cultivation and an exclusive appropriation for purposes of converting and using timber. In the latter case, as suggestion by Chancellor Harpor in *Thompson v. Bostick,* McMul., 78, the consideration of waste may be the controlling factor. In that case it was said:

"If, as suggested, a tenant in possession should make profits by selling timber or tan bark, I suppose his cotenant might recover his share of those, not as on an account for rent and profits, but as waste."

We think the applicable rule here, required by the character of the legal relationship existing between tenants in common and soundly grounded in reason, is that where the occupying cotenant appropriates by cutting, removing, and selling more than his proportion of the timber on the common property, he should be held liable to his cotenant for the fair stumpage value of the cotenant's timber so appropriated, in any event, and, in addition thereto, for any profits actually realized by him from the conversion of the timber after being charged with the cost of the stumpage of its fair value. Applying that rule in this case, Bruton is liable to Williams for the stumpage value of the 464,000 feet at $2.50 per M, the value found and fixed by the Court below, with interest thereon from the date of the appropriation of the timber. As the date from which interest was to run was not found by the Referee, and as the time of the cutting of the timber appears to have extended over the three years of 1917, 1918, and 1919, we here adopt July 1, 1918, as a fair mean date, and hold that interest on this stumpage value should be computed from that date. And in addition to this stumpage value, with interest as indicated, Bruton must be held liable to Williams for the actual profits realized by him, after being charged with the stumpage,

from the cutting, removal, and sale of this 464,000 feet of timber. It was Williams timber, and, if any profit was actually realized therefrom by his cotenant, Bruton, Williams, in good conscience, we think, is entitled to it.

What profits, if any, were actually realized by Bruton from the conversion of this timber are not clearly disclosed by the record. He testified that the "Southern Wholesale Lumber Company credited him with $6.50 per M f. o. b. cars at his mill"; that "later, when he did the logging for them, they paid him $15 f. o. b. his mill"; and that, in 1919, he sold "oak logs from Lykes place at $20 for No. 1, $15 for No. 2, and $12.50 for No. 3 f. o. b. Southern Railway," his mill. No showing is made as to what his costs and expenses were in getting out the timber and putting it on board the cars. In the circumstances, one of the rights which Williams, as an excluded tenant in common, is entitled to have recognized and safeguarded by a Court of Equity, is the right to have the tenant, who occupies and appropriates in excess of his proportion of the land, account fully and fairly for the profits received. *Youmans v. Youmans,* 128 S. C., 32; 121 S. E., 674. If Bruton had met that obligation by a full accounting and disclosure, showing that no profits, in the sense above indicated, had actually accrued to him from the conversion of Williams' timber, we think the principle applied in *Jones v. Massey, supra,* that the measure of liability is actual profits received by the occupying tenant, regardless of the "skill" or business ability "which he happened to possess," etc., would be applicable here. But, in the absence of such showing and disclosure, he cannot justly complain if he is charged with such profits as the evidence establishes, or tends to establish, could have been made by a man of ordinary business sense and capacity in the exercise of due diligence. Plaintiff adduced evidence as to the average price of yellow pine, gum, and oak f. o. b. cars Savannah, Ga., during the years 1917, 1918, and 1919; statement of

Southern Wholesale Lumber Company that in 1919 they bought a certain number of feet from Bruton at $6.50 per M f. o. b. Southern Railway track, the lumber company "doing the logging," and a certain number of feet at $15 per M, "Bruton doing the logging"; the testimony of I. B. Slater to the effect that he had charge of logging operations on the Lykes place for the Southern Wholesale Lumber Company in 1919, on a contract basis of $7.50 per M for cutting, logging, and loading on cars, that the cost basis to the lumber company was $22.50 per M, that witness could have sold "these logs at that time at Orangeburg, S. C., for $35 per M, on which his costs would have been, stumpage $5, logging $7.50, freight to Bruton $5, freight to Orangeburg $5, aggregating $22.50 and making a profit to him of $12.50 per M, without manufacturing the logs into lumber." Hence it is appellant's contention here that the evidence establishes that, from 1917, on the net profit made, or which could have been made in the exercise of due diligence, by Bruton from the cutting, removal, and sale of this timber, after allowing him $5 per M for stumpage, was $12.50 per M, and that Bruton is properly chargeable with that profit. The point of fact here involved is one which this Court is averse to determining as a matter of first instance upon the somewhat meager data furnished by this record; but the parties have made their case. It has been twice before the Circuit Court and this is its second appearance here, and, as the question is squarely presented by appellant's exceptions, we will not decline to dispose of it. If the stumpage cost to Bruton is placed at $2.50 per M, the amount we have herein accepted and allowed for the stumpage value of the timber, it is apparent that the plaintiff's estimate of Bruton's profit, based on the figures of Slater above set out, which allow for a stumpage cost of $5 per M, paid to Bruton, would have to be increased to $15, instead of $12.50, net profit per M. But this figure of a net profit of $15 per M is based on conditions in 1919. There is no definite evi-

dence tending satisfactorily to establish that such profit could have been realized in 1917 and 1918. In view of that consideration—of the fact, fairly within the zone of common knowledge, that paper profits from timber operations are more or less illusory—and of the further consideration, suggested by evidentiary facts which are not herein adverted to that Williams' timber might not have been marketable at all but for the building of Bruton's railroad, etc., we think the net profit figured by plaintiff of $15 per M should be cut in half and such net profit figured at $7.50 per M. Upon that basis Bruton is liable to the plaintiff, in addition to the stumpage value above fixed and allowed, for 464,000 feet at $7.50 per M, amounting to the sum of $3,480, on which interest should be allowed from the mean date of July 1, 1918.

All exceptions not disposed of by the foregoing findings and conclusions are overruled.

It is accordingly adjudged that the decree of the Circuit Court be and is hereby modified in the particulars above indicated, and that the cause be remanded to the Circuit Court for the purpose of carrying into effect, by appropriate order or decree, the views and conclusions herein announced.

Modified.

Messrs. Justice Watts and Cothran and Mr. Acting Associate Justice R. O. Purdy concur.

Mr. Chief Justice Gary did not participate.