A. L. ATTAWAY, Annie Laurie Attaway, Hugh D. McCullough, E. A. McCullough, and Ruth McCullough, Appellants,

v.

STANOLIND OIL & GAS COMPANY, a corporation, Appellee.

No. 5218.

United States Court of Appeals Tenth Circuit.

March 20, 1956.

Rehearing Denied April 25, 1956.

C. M. Neal, Hobbs, N. M. (W. D. Girand, Jr., and J. W. Neal, Hobbs, N. M., were with him on the brief), for appellants.

Ross L. Malone, Jr., Roswell, N. M., for appellee.

Before BRATTON, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

Appellants, owners of a mineral interest in lands in Lea County, New Mexico, brought this suit in the New Mexico state court against appellee, Stanolind Oil and Gas Company, to quiet their title to same. The decisive issue is the validity of an oil and gas lease executed to Stanolind covering the mineral interest by a partner of the partnership in the name of which the mineral interest was held at the time of the execution of the lease. The case was removed to the federal court on diversity of citizenship and requisite amount in controversy, and the appeal is from the judgment validating the lease and denying relief.

The case comes here on stipulation of facts to the effect that from 1926, Pete Louissena and his brother, Martin Louissena, have engaged in ranching operations in southeastern New Mexico as equal partners under the firm name of Louissena & Company. They lived together on the ranch, apparently in the same house, and jointly made all decisions with reference to their partnership operations. All income from such operations has been deposited in the bank account of Louissena & Company, and all expenses, including living expenses, have been paid from that account. All of the time of the two partners has been devoted to the partnership operations and all other property acquired by them has been held in the partnership name and used in connection with their ranching operations. Pete Louissena was married to his present wife, Vivienne, in the year 1924. Martin is a single man who speaks very poor English and conducted none of the business operations of the partnership. On September 21, 1934, he executed a power of attorney to his brother, Pete, which was duly recorded and was in full force and effect at all times material here, and Pete has always conducted the business operations of the partnership on the basis of joint decisions reached between the partners.

In 1929, William H. Fort purchased some sheep from Louissena & Company, giving a promissory note for the purchase price, secured by a chattel mortgage on the sheep, and a second lien on a one-half section of land in Lea County, New Mexico. Fort having failed to pay the note and mortgage in full when due, the Louissenas agreed to accept a deed to 40 acres of minerals under part of the mortgaged land in consideration of credit of $800 on the note. The mineral deed, dated August 10, 1937, ran to "Louissena Brothers" instead of "Louissena & Company", but no complaint was made of the "misnomer" and Fort's note to Louissena & Company was credited with the sum of $800, and it was ultimately paid in full.

In 1945, Pete, Martin and Vivienne Louissena agreed among themselves to accept Stanolind's offer to purchase a ten-year oil and gas lease on the mineral interest held in the name of the partnership for a bonus of $400 and delay

rentals of 50¢ per acre. The lease was signed "Louissena Brothers, a co-partnership, by Pete Louissena". The bonus consideration was deposited in the partnership bank account, as were the annual delay rentals paid by Stanolind in accordance with the terms of the lease. The Louissenas have at all times recognized the Stanolind lease as being in full force and effect and embracing the entire 40 acres.

In August 1954, the Louissenas executed a mineral deed to 10 acres of their 40-acre mineral interest for $1,600 per acre, and in September they drafted another 20 acres to John K. Overby of Midland, Texas, for a like sum per acre. The appellants here paid the draft and took the mineral deed from Overby. This deed was executed in the name of "Louissena Brothers" by Pete, Martin and Vivienne Louissena. Before the appellants paid the draft, they were advised by their attorneys of the unreleased Stanolind lease which had not expired and that the partnership composed of Pete and Martin Louissena were the lessors. At the time of the sale of the minerals, the Louissenas considered that they were selling the minerals subject to the Stanolind lease and the appellants considered that they were purchasing it subject to that lease; and it is agreed that if the minerals had been unleased, their market value would have been between $2,100 and $3,200 per acre instead of the $1,600 purchase price. The proceeds of the sale of all the mineral interests were deposited by the Louissenas in a new account in the name of "Louissena & Company", but as soon as the transactions were completed and the broker's fees paid, the balance of the sale price for the minerals was divided between the partners and deposited to individual accounts opened for that purpose. These accounts were the first individual accounts of the partners since the formation of the partnership.

Upon Stanolind's request, all of the parties in the chain of title executed a ratification of Stanolind's lease except the appellants, who refused to do so after being advised that their mineral interest was not subject to the Stanolind lease. And, it is agreed that this is the first time the appellants considered that the mineral interest they had purchased from the Louissenas was not subject to the Stanolind lease. After the appellants tendered Stanolind the lease bonus and delay rentals paid on the 20-acre mineral interest, and offered to pay a proportionate share of all expenditures made by Stanolind in connection with the development and operation of the lease, and the tender was refused, the appellants commenced this quiet title suit.

In denying equitable relief, the trial court first emphasized the fact that to quiet appellant's title against the oil and gas lease would unjustly enrich them by giving them property for which they had not paid. It then concluded that the mineral interest in question, having been acquired in the name of the co-partnership with partnership funds, became, in equity, partnership property of Louissena & Company, and continued as an asset of that partnership until conveyed to the appellants; that title to such minerals vested in Pete and Martin Louissena in trust for the partnership for all partnership purposes, and that the interest of each individual partner in the property was limited to their share of the profits and surplus remaining after payment of partnership obligations and the balancing of partnership accounts upon dissolution of the partnership; that the lease was sold by the partnership in the course of partnership business, and the joinder of Martin was therefore not requisite to its validity, it being sufficient that he had previously given both written and parol authority to Pete to act for the partnership in this regard; and having held that the mineral interest was partnership property, the court concluded that it was not community property requiring the joinder of Pete's wife in the execution of the oil and gas lease. The court was, moreover, of the opinion that regardless of the validity of the Stanolind lease at the time of its execution and delivery, the subsequent receipt and ac-

ceptance of delay rentals for nine years by the Louissenas, of which the appellants had knowledge, effectively subjected the mineral interest to the terms of the Stanolind lease.

On appeal, appellants first deny that the mineral interest taken in the name of the partnership ever became partnership property. They say instead that by operation of law the mineral interest became the property of the individual partners in cotenancy; that one cotenant was not authorized to convey the interest of the other without written authority to do so, and that the power of attorney executed by Martin to Pete "pertaining to the business or interest of Louissena & Company" did not authorize the conveyance of property of one cotenant by the other; that the interest of Pete Louissena in the realty was community property and not subject to alienation without his wife's joinder; that the oil and gas lease was therefore void as to Martin Louissena, and also void and of no effect as to Pete Louissena and his wife; and, being void, the appellants are entitled to equitable relief.

■■■ Of course, if the mineral interest taken in the name of the partnership did not become partnership property, the partners held it in cotenancy and neither of them was authorized to alienate the interest of the other without written authority to do so. Adams v. Blumenshine, 27 N.M. 643, 204 P. 66, 20 A.L.R. 369. And, the power of attorney from Martin to Pete, being limited to partnership business, was ineffectual to authorize the conveyance of individual property.

■■■ It is equally true that if the partners did hold as cotenants, the interest of Pete Louissena was community and the husband was without power to execute a valid oil and gas lease covering the same without the joinder of his wife. Terry v. Humphreys, 27 N.M.

564, 203 P. 539; McGrail v. Fields, 53 N.M. 158, 203 P.2d 1000; Bolack v. Hedges, 56 N.M. 92, 240 P.2d 844; and, being void and of no effect, the lease could not be validated by the Louissenas after they no longer owned the mineral interest covered by the lease.

■■ But the mineral interest was acquired in the name of the partnership in partial payment of a debt owed the partnership, and while the partnership, not being a legal entity was incapable of holding legal title thereto,[1] such title may rest in the partners, in trust, for partnership purposes if the partners so intend. Darrow v. Calkins, 154 N.Y. 503, 49 N.E. 61, 48 L.R.A. 299; Tiffany Real Property, 3rd Ed., Vol. 2, 247, §§ 443–446; American Law of Property, Vol. 2, § 6.8, Chap. V, p. 36 et seq.; Thompson on Real Property, Vol. 4, p. 375, §§ 1839–1841. And, one partner may convey, on behalf of the firm, a valid title to the property if such conveyance is in furtherance of the partnership business and in the scope of either expressed or implied authority, or upon adoption or ratification of the partners to be bound. McGahan v. National Bank of Rondout, 156 U.S. 218, 232, 15 S.Ct. 347, 39 L.Ed. 403; Thompson on Real Property, Vol. 4, § 1840; 40 Am.Jur., Partnerships, p. 251, § 174.

Adams v. Blumenshine, supra, relied upon by the appellants, is not to the contrary. There, the real estate in question was purchased by the two partners in their individual capacity, each paying an equal amount out of their individual funds. There was no evidence in the record that the partners ever agreed that the purchase was made for the partnership or otherwise than as tenants in common. A mortgage was given on the property by the parties in their individual capacities, and was paid out of the profits of the partnership business, but there is no evidence that these monies

1. This case arose before New Mexico adopted the Uniform Partnership Act, Ch. 37 Sess.Laws 1947, Art. 1, 66 N.M. Stat.1953, §§ 66-1-8, 66-1-10, under which a partnership may hold and convey title to realty. See 40 Am.Jur., Partnership, p. 249, § 171.

did not represent the individual shares of the partners. The court rightly concluded that the realty was not acquired as partnership property and never became such, but if so, it was reconverted into real estate by the winding up of the affairs of the partnership. Implicit in this decision is, we think, a distinct recognition of the equitable principle under which realty may become partnership property when purchased with partnership funds and the parties clearly indicate an intention to so treat it.

■ Here, the parties not only purchased the property with partnership funds in the name of the partnership, they deposited the proceeds of the lease in the firm account for partnership use. True, the partnership was primarily engaged in the ranching business and the mineral interest was not strictly utilized in that business, but the proceeds of the sale of the oil and gas lease and the delay rentals were deposited in the firm account and undoubtedly used in the firm business. The oil and gas lease was executed while the partnership was a going concern and under no thought of liquidation. We think the transaction cannot be said to be outside the scope of the partnership business. See Bank of Southwestern Georgia v. McGarrah, 120 Ga. 944, 48 S.E. 393. After all, the mere use of property for firm business may be only slight evidence of partnership property—it is not conclusive. See Adams v. Blumenshine, supra.

■ The evidence is entirely sufficient to support the conclusion that the mineral interest was partnership property and that the oil and gas lease was executed by one of the partners in the course of the partnership business with full authority to do so, and that his acts in that respect were fully and effectively adopted and ratified by the other partner.

■ Having concluded that the mineral interest became partnership property with legal title in the partners, in trust, for partnership purposes, there can be little doubt of the power and authority of the husband to execute an oil

and gas lease on the same without the joinder of his wife, for it is well settled in New Mexico that the joinder of a wife is not requisite to the alienation of property held by the husband as trustee. See Mapel v. Starriett, 28 N.M. 1, 205 P. 726; Mell v. Shrader, 33 N.M. 55, 263 P. 758; Moritzky v. Bobo, 41 N.M. 571, 72 P.2d 24. Once community property properly becomes a part of partnership property, it is "subject to all obligations and demands of the commercial partnership before any right of the wife is enforceable as to such property." De Funiak, Principles of Community Property, Vol. 1, § 172, p. 484. See also Cummings v. Weast, 72 Ariz. 93, 231 P.2d 439. To be sure, if the partner was empowered to execute an oil and gas lease on the partnership property, it would not be invalid because of the wife's inchoate interest in it as community property. So long as the property remained an asset of the partnership, the right of the wife of one of the partners never attached. Cf. Adams v. Blumenshine, supra.

The judgment is affirmed.