## LEWIS v. VIRGINIA-CAROLINA CHEMICAL CO.

1. TIMBER.—A LEASE to mine phosphates, and as incident thereto to build railroads and tramways, "together with the right to cut and use the timber on the said land for the construction of the superstructure of such railroads and tramways, and also the right to cut and use all the fuel proper for the use of the machinery and employees of the said lessee mining the said land, including fuel necessary for washing rock * * * (but not the right to cut wood or timber for market)," does not include the right to use timber in building homes to be left on the lands, although much timber for fuel has been saved by use of coal.

2. DAMAGES—TIMBER—LEASE.—When a lessee under honest mistake of right cuts and saws timber on leased lands, which is built into houses left thereon by the terms of the lease, the measure of damages for his technical violation of the lease should be the value of the timber on the stump and interest from date of appropriation.

Before PURDY, J., Charleston, August, 1903. Modified.

Action by Sally F. Lewis *et al.* against Virginia-Carolina Chemical Co. From Circuit decree, defendant appeals.

*Messrs. Mitchell & Smith,* for appellant, cite: *The lease authorized the use of the timber:* 5 Wall., 689; 107 U. S.,

441. *Extent of defendant's liability:* 3 Sand. Ch., 604. *Doctrine of waste and not trespass applies:* 22 S. C., 60; 28 Ency., 867, 868, 869, 941.

*Messrs. Charles Inglesby* and *Burke & Erckmann*, contra, cite: *Measure of damages where trespass is committed under honest mistake:* Sed. on Dam., 670-3; 36 Am. R., 769; 8 Rich. Eq., 46. *As to accounting for profits:* 1 Story Eq. Jur., sec. 69; 28 Ency., 941; 1 Ves., Jr., 78; 2 Hare, 560; 4 K. & J., 343; 13 Hare., 340; 6 Wait A. & D., 256; 61 S. C., 329.

July 7, 1904. The opinion of the Court was delivered by

MR. JUSTICE JONES. The plaintiffs, as heirs at law of George F. Lewis, deceased, lessor, brought this action against the defendant, lessee of certain lands in Charleston County, let for the purpose of mining phosphate and phosphatic deposits, to restrain further waste in cutting timber therefrom for purposes not authorized by the lease, and for damages and account for the value of timber already cut, including profits thereon. The decree of the Circuit Court adjudged the defendant pay plaintiffs $172, the value of 688 cords of wood, at 25c. per cord, from trees unlawfully cut, and also for 458,524 feet of lumber, at the rate of $9 per thousand feet, less the value added thereto by cutting, hauling, sawing and handling the same, with interest from April 1st, 1900, and to this end it was referred to the master to take testimony.

The principal questions raised by the exceptions are: (1) As to the construction of the lease. (2) As to the measure of damages.

The lease, after granting right to dig and mine upon the land described for phosphate rock and other minerals for the term of five years, provided: "and as incident to the said mining right, to locate, construct and operate one or more lines of railroads or tramways upon the said land, together with the right to cut and use the timber

on the said land for the construction of the super-structure of such railroads or tramways. Also the right to cut and use all the fuel proper for the use of the machinery and employees of the said lessee mining the land, including such fuel as may be necessary for washing and otherwise preparing the rock thereon mined for market (but not the right to cut wood or timber for market)—the term of five years herein provided to be contingent upon the available supply of phosphate and phosphatic deposit not being sooner exhausted."

The timber cut and used by defendant for which account was decreed was used in the construction of buildings and structures upon the land other than railroads or tramways but necessary to carry out the object of the mining lease, and defendant contends that a proper construction of the lease, in view of all the circumstances, authorized such use of the timber. It is doubtless true that, by implication, the lease authorized the erection on the land of all structures necessary to carry out the purpose of the lease, but it does not follow that defendant was thereby authorized to use plaintiff's timber for such purpose, especially when the lease expressly declares for what purpose timber may be used. It is contended that the words in parenthesis, "but not the right to cut wood or timber for market," were added to completely cover all conditions of restriction on the use of the timber for mining purposes, and emphasize the right of the lessee to use timber for necessary mining purposes, subject only to the restriction that the wood or timber be cut or sold for market. We do not think, however, that these words can be construed to have such effect, as that would annul the other words expressly restricting the use of the timber. These words may have been added merely to emphasize a particular restriction and not to enlarge the grant, as held by the Circuit Court, or they may have been inserted to prevent the possibility of a construction which would permit defendant to sell or exchange the timber it would otherwise consume in fuel for an equivalent amount in coal or other fuel

material.    We agree with the Circuit Court that the lease did not authorize the use of the timber except in the superstructure of the railroads or tramways and the specified fuel purposes.

The Circuit Court has found, however, that the defendant cut the timber in perfect good faith that it had the right to do so.    It also appears as a fact undisputed that the greater portion of the lumber in question was used upon the premises in the erection of buildings and other structures worth $20,000, which, under the terms of the lease, were left upon the premises on its termination.    The defendant found a dismantled mining property, so far as buildings were concerned, and left it in good condition for future occupancy.    It also appears that defendant used coal for fuel instead of wood, and that by actual computation it consumed for all purposes less timber than would have been destroyed had it used timber instead of coal for fuel.    These facts come near to establishing a case of meliorating waste exempting from damages, as the injury to the inheritance by the unauthorized destruction of timber is more than offset by the saving of timber in other respects, and by the use of the timber cut on the premises in its permanent improvement.    But the buildings were to become the property of plaintiffs, without regard to where the lumber came from, and the use of the timber was expressly restricted to the purposes named; so that it was a technical violation of plaintiffs' right to cut and use the timber for an unauthorized purpose, and plaintiffs are entitled to compensation.    What should be the measure of damages?    The Circuit Court correctly decided that the rule stated in *State* v. *Pacific Guano Co.,* 22 S. C., 60, 87, was applicable.    In that case it was held that where a trespass is committed under an honest but mistaken belief of right, the measure of damage is the property, less the amount which the trespass has added to its value by its removal and preparation for market.    That was a case of an unlawful digging and conversion of phosphate rock under

an honest mistake of right. In practically applying the rule stated, the Court, in *State* v. *Pacific Guano Co.,* decreed that the defendant should be liable for the value of the phosphate rock *"in its natural state and position."* By analogy the measure of damages in this case should be the value of the timber on the stump, as it was in its natural state and position. This may be ascertained by starting and ending with the value on the stump, as the simplest and most direct way. If, however, in trying to arrive at such value, we start with the market value of the lumber at the mill, we should be careful to deduct, not simply the *cost* of converting the timber into lumber, but the *value* added to the value of the timber on the stump, by the time, skill, labor and expenditures employed in the process of manufacture. If, therefore, the market value of the lumber at the mill includes any *profits* of manufacturing, such profits must be deducted, otherwise you would give the plaintiffs not only the value of the timber on the stump, but in addition thereto, the profits of manufacture which enter as an element of market value under normal conditions. The Circuit Court misapplied the rule in *State* v. *Pacific Guano Co.,* in requiring defendant to pay the value of the timber on the stump and the profit of converting the timber into lumber.

This is not a case to reclaim property improved by another, in which, in order to give the owner his own, it may be necessary to give him also what an inadvertent trespasser has added to it. This case is peculiar in this, that plaintiffs already have the property, taken and improved by defendant in the buildings into which it was converted. The case is one calling for the lightest measure of damages which the law will allow, and it should not exceed the value of the timber on the stump, with interest from time of appropriation or cutting. It is not suggested that the land was otherwise injured than by the mere taking of the timber.

There was testimony as to the value of the timber on the stump, but as the Circuit Court has made no finding on that point, we prefer not to go into that matter until the Circuit

Court shall have passed upon it, either upon the testimony now in or such additional testimony as may be offered thereon by order of the Circuit Court.

We are not fully satisfied with the finding of fact by the Circuit Court, that the value of the lumber at the mill was $9 per thousand feet, nor with the finding that defendant should be liable for $172, as value of cord wood also obtainable from trees cut and sawn into lumber. It may be that in estimating the value of the timber on the stump it is customary to take into consideration the parts of the trees not converted into lumber. In order, therefore, to leave the inquiry as to the value of the timber on the stump unembarrassed by these findings, we reverse them.

There was argument in this case as if we had under consideration herein an appeal from a temporary order of injunction granted by the Circuit Court. As to that, Judge Purdy in his decree said, "a temporary injunction was granted and an appeal was taken by defendant, but having ceased to cut the timber, and the time of the lease having expired thereafter, it seems that really there was nothing to be gained by the appeal, and it was not carried on." We do not regard the brief before us as showing an appeal from an order of injunction, nor do we deem the matter of any importance at this stage of the case and under the circumstances stated.

The judgment of the Circuit Court is modified in the particulars mentioned, and the case is remanded for further proceedings in accordance with the views herein announced.