FLANAGAN, TRUSTEE IN BANKRUPTCY, RESPONDENT, *v.*
FULLER ET AL., APPELLANTS.

(No. 6,122.)

(Submitted June 4, 1927.   Decided June 15, 1927.)

[257 Pac. 475.]

*Conversion—Landlord and Tenant—Mortgages—Rents and*
*Profits—When Landlord's Claim to Crops as Rental Superior*
*to Claim of Mortgagee Under Mortgage.*

Conversion — Landlord and Tenant — Mortgages — When Mortgagee not
   Entitled to Rents and Profits Under Mortgage as Against Land-
   lord's Claim for Rental.
   1. A mortgage upon farm lands provided, *inter alia,* that on
   default to pay interest the debt should become due and payable
   and upon institution of foreclosure suit all rents and profits
   should then accrue to the benefit of the mortgagee, and that
   a receiver might be appointed to collect them; it did not pro-
   vide for immediate entry upon and possession of the premises
   by the mortgagee nor that he could immediately, upon default,
   summarily sell the premises without foreclosure. Before maturity
   of the mortgage note the mortgagor was adjudged a bankrupt
   and a trustee in bankruptcy appointed, who leased the property
   under an agreement whereby the tenant was to receive two-
   thirds of the crop raised and the trustee (landlord) one-third as
   rental. After the crop had been harvested and threshed and the
   landlord's one-third placed in an elevator, under the lease agree-
   ment, for the landlord, ᵒthe mortgagee demanded and secured
   possession thereof under claim that, default having been made
   in payment of interest, he was entitled thereto under the rents
   and profits clause of the mortgage. In an action by the land-
   lord (trustee) for the conversion of his share of the crop, *held,*
   under *Sharp Bros.* v. *Bartlett,* 76 Mont. 415, that the landlord,
   and not the mortgagee, was entitled to the grain in question.
Mortgages—Construction.
   2. A mortgage on farm lands providing that upon default in
   payment of principal or interest the mortgage might be foreclosed
   and *then* the rents and profits should accrue to the mortgagee and
   a receiver "may be" appointed to collect them *pending* fore-
   closure suit, *held* to mean that the rents and profits should accrue
   to the mortgagee only after foreclosure suit was brought and
   that pending the suit and the period of redemption a receiver
   must be appointed to receive such rents and profits.

[1]   Bankruptcy, 7 C. J., sec. 189, p. 115, n. 54.   Landlord and Ten-
ant, 36 C. J., sec. 1944, p. 703, n. 79.
[2]   Mortgages, 41 C. J., sec. 601, p. 624, n. 87, p. 625, n. 91.

*Appeal from District Court, Chouteau County; John W.*
*Tattan, Judge.*

ACTION by F. A. Flanagan, as trustee in bankruptcy of the estate of Berry Mackey, a bankrupt, against O. A. Fuller and others. Judgment for plaintiff and defendants appeal. Affirmed.

*Messrs. Freeman, Thelen & Frary,* for Appellants, submitted a brief; *Mr. James W. Freeman* argued the cause orally.

At the outset, it must be remembered that the respondent, F. A. Flanagan, as trustee in bankruptcy, is merely a representative of Berry Mackey, a bankrupt, and of the creditors of the estate of Berry Mackey, a bankrupt, and as such does not have any greater rights than Berry Mackey himself could have. This is fundamental and needs no citation of authority.

This being a fact, any contract that Berry Mackey entered into prior to the time of his adjudication as a bankrupt is binding upon F. A. Flanagan, as trustee in bankruptcy.

On this theory, in the case of *In re Jarmulowsky,* 224 Fed. 141, the court in construing a mortgage contract relative to the rents and profits as between the bankrupt's trustee and the mortgagee, used this pertinent language: ''As between the bankrupt and the mortgagee the agreement, would, of course, be valid, and it would seem that the creditors should stand in no better position than the bankrupt, except by virtue of some statute or rule forbidding secret liens. No such rule exists so far as I know, nor any reason why the agreement should not be carried out.''

This being the law, then, the question is raised as to the interpretation of the mortgage contract in so far as it affects the rights of F. A. Flanagan, as trustee in bankruptcy of the estate of Berry Mackey, a bankrupt, the original mortgagor, and the Phoenix Mutual Life Insurance Company, a corporation, as the original mortgagee, represented in this action by its agents, Messrs. Frary & Burlingame.

This mortgage provides in short, so far as this case is concerned, as follows: "It is agreed that if the mortgagor or maker or makers of the obligation secured in this indenture, shall fail to pay the principal or any interest as the same becomes due, * * * then all of the debts secured hereby shall become due and collectible, * * * and all rents and profits of said property shall then immediately accrue to the benefit of the said mortgagee."

In the case of the *Union Central Life Ins. Co.* v. *Jensen,* 74 Mont. 70, 237 Pac. 519, this court laid down the following doctrine: "Unless contrary to the law or against public policy, the terms of the contract are controlling."

In the case of *Freedman's Savings & Trust Co.* v. *Shepherd,* 32 L. Ed. 166, the supreme court of the United States, in interpreting a mortgage contract relative to the rights of the rents and profits therefrom as between various mortgagees and the mortgagor, stated as follows: "It is, of course, competent for the parties to provide in the mortgage, for the payment of the rents and profits to the mortgagee, even while the mortgagor remains in possession."

Since the supreme court of the United States has found and held that parties to a mortgage may contract as to the rents and profits of the mortgaged property, we may have the right to presume that such a contract as involved in this action is not contrary to the law or against the public policy, and that, therefore, this court will enforce it according to its terms.

We are well aware, of course, that this court, in the case of *Sharp Bros., Inc.,* v. *Bartlett,* 76 Mont. 415, 248 Pac. 199, in interpreting a mortgage contract verbatim with the one in question, did hold as against the defendant Bartlett, who was the tenant in possession. However, after giving that decision careful thought and consideration, we have come to the conclusion that in that action the basis of this decision of this court was upon the doctrine enunciated by it in the case of *Conrad Mercantile Co.* v. *Siler,* 75 Mont. 36, 241 Pac. 617, wherein it held that in a claim and delivery action, or in a

conversion suit, one party could not defeat the other party claiming by showing title or right of possession in a third party, unless that possession was absolute; that since the mortgagee was not a party to the action, the rights of Sharp Bros., Inc., were superior as against those of Bartlett. Therefore, with this interpretation of this decision, we leave the same and come to the present one, wherein, of course, the facts are materially different.

As the pleadings and the evidence show O. A. Fuller, the tenant in the present action had, prior to the commencement of this action, delivered the rents and profits for the year 1924 to the agents of the Phoenix Mutual Life Insurance Company, as mortgagee, and in this action in conversion the agents of the Phoenix Mutual Life Insurance Company, as mortgagee, are expressly made parties defendant.

The question as to the right to the rents and profits of mortgaged property has led to a great variety of decisions, but we believe that the same, after an examination of the facts, can all easily be interpreted.

In the case of *Freedman's Savings & Trust Co.* v. *Shepherd,* 32 L. Ed. 163, the mortgage trust deed in question did not give to the trustee upon default any right to take possession or appropriate the rents of the property or any rights to the rents and profits of the mortgaged property. Interpreting the law generally, the supreme court of the United States did use the following language: "Even where the income is expressly pledged as security for the mortgage debt, with the right in the mortgagee to take possession upon the failure of the mortgagor to perform the conditions of the mortgage, the general rule is that the mortgagee is not entitled to the rents and profits of the mortgaged premises until he takes actual possession or until possession is taken in his behalf by a receiver, or, until, in proper form he demands and is refused possession."

It will thus be seen that the supreme court of the United States did hold to the theory of law enunciated by this court in the case of *Union Central Life Ins. Co.* v. *Jensen,*

supra, wherein this court did state that the terms of the contract are controlling. In other words, if the mortgage contract provides that in case of a default the mortgagee is entitled to the possession and to the rents and profits, then before the mortgagee may claim any rights, he must necessarily enter into and take possession.

However, in the case at hand, the mortgage contract involved does not give to the mortgagee the right to take possession, and his right to the rents and profits is not predicated upon his taking possession of the property, and this differentiation was referred to in the case of *Sharp Bros., Inc.,* v. *Bartlett,* supra.

In the case of *In re Israelson,* 230 Fed. 1000, there was a question between the mortgagee and the trustee in bankruptcy as to the rents and profits, and the mortgage in question provided: "That in the event of any default mentioned in article third of these covenants the said mortgagees shall have the right forthwith to enter upon and take possession of the said mortgaged premises and to let the said premises and to receive the rents, issues and profits after payment of all the necessary charges and expenses on account of the amount hereby secured, and, in the event of any such default, the said rents and profits are hereby assigned to the mortgagee as further security for the payment of said indebtedness." In interpreting this mortgage provision, the court followed the case of *Freedman's Savings & Trust Co.* v. *Shepherd,* and expressly held that the mortgagee had to enter into and take possession of the property before he was entitled to any rental. (See, also, *In re Brose,* 254 Fed. 664.)

It will thus be seen that in these various cases the courts in interpreting the mortgage contracts have held the mortgagee to a compliance with his contract as well as the mortgagor, and that the mortgagee as against other mortgagees to prevail must have asserted his right to either enter into possession, if the mortgage contract provided for the same, or to have possessed himself of the rents and profits.

In the present case, the mortgagee did assert all of the rights that it had. It made a demand upon the tenant in possession and did receive and reduce to its own possession the rents and profits for the land during the year 1924, as it was entitled to under its said mortgage contract.

In the case of *Sullivan* v. *Rosson*, 119 N. E. 405, the New York supreme court referred to the case of *In re Jarmulowsky,* 224 Fed. 141, which involved the rights of a trustee in bankruptcy as against a mortgagee for the rents and profits, and used the following language: "The decision in the *Matter of Jarmulowsky,* 224 Fed. 141, cited by the respondent, was a contest between the mortgagee and the creditors of a bankrupt, and not as between a receiver in possession and the mortgagee having an assignment of the rents as a further security for the payment of the mortgage debt."

In the case of *In re Jarmulowsky,* supra, which raises the question as to the right of the rents and profits as between the trustee in bankruptcy and the mortgagee, the court ruled that the mortgagee as against the trustee in bankruptcy was even entitled to the rentals which had become due and were collected by the trustee in bankruptcy after default on the mortgage, although the mortgagee had not applied for a foreclosure receiver or for an order of sequestration.

This, therefore, is the rule in the federal court: The mortgagee, as against the trustee, is entitled to the rents and profits of the land, providing, of course, the mortgage contract gives him such right. There are no adverse claims of other mortgagees or creditors involved in this action.

*Messrs. Miller & Wiley,* for Respondent, submitted a brief; *Mr. C. W. Wiley* argued the cause orally.

We believe that the decision of this court in the case of *Sharp Bros., Inc.,* v. *Bartlett,* 76 Mont. 415, 248 Pac. 199, should be decisive of this case, as the provisions in the mortgage in the case at bar in regard to the rents and profits of the land involved are exactly the same as in the *Sharp Case.*

In that case the mortgagee had already brought suit to foreclose its mortgage before the crop was grown, but in the case at bar the crop had been raised and harvested and the grain stored in the granary before the mortgagee demanded the rents and profits for the year 1924, and before the mortgagee had started foreclosure proceedings. From the testimony of defendant Fuller, he had harvested, threshed and stored in a granary on the premises the crop of that year during the month of August, 1924, and it was not until September 12 of that year that demand was made upon him, tenant in possession of the land, for the landlord's share of the crop, and it was not until October 13, 1924, that the mortgagee filed complaint of foreclosure of its mortgage. Under the decisions of this court in *Power Mercantile Co.* v. *Moore,* 55 Mont. 401, 177 Pac. 406, and a late decision of this court in *Morton* v. *Union Central Ins. Co.,* decided January 19, 1927, and not yet reported, the crop having been severed from the land was no longer a part thereof and the ownership of the tenant and of the respondent was unquestionable before demand was made by the mortgagee or suit of foreclosure started, and we think the decisions in these two cases are decisive of the subject.

Appellants base their right upon their written demand on September 12, 1924. In that demand they not only demanded the rents and profits, but the possession of said lands, which they had no right whatever to do. In the case of *Craig* v. *Burns,* 65 Mont. 550, 212 Pac. 856, it was held that the mortgagee was entitled to the rents and profits of the land, because the mortgagor had put him in rightful possession of the premises.

As we urged before in the *Sharp Case* the provision in the mortgage in question here as to the rights of the mortgagee on default of the mortgagor gives no right to the mortgagee to collect the rents and profits on the land until foreclosure, unless he has a receiver appointed for that purpose as provided in the mortgage. The provision cannot possibly be con-

strued as an assignment of the rents and profits to the mort-gagee as claimed by appellants.

In the *Case of Israelson,* 230 Fed. 1000, cited in appellants' brief, this language is used in the mortgage: "The said rents and profits are hereby assigned to the mortgagee as further security for the payment of said indebtedness"; and even in that case the court held that the mortgagee had to enter into and take possession of the property before he was entitled to any rental.

The test as to rentals: The principle laid down in the *Sharp Case,* supra, was that the mortgagee having no right to the possession of the land had no right to the rents and profits. This decision is supported by *Freedman's Savings & Trust Co. v. Shepherd,* 127 U. S. 494, 32 L. Ed. 163, 8 Sup. Ct. Rep. 1250 [see, also, Rose's U. S. Notes], Judge Harlan saying: "And even where the income is expressly pledged as security for the mortgaged debt, the general rule is that the mortgagee is not entitled to the rents and profits of the mortgaged premises until he takes actual possession, or until possession is taken in his behalf by the receiver, or until in proper form he demands and is refused possession." Appellants quote this decision and seem to rely entirely upon the last clause, which says: "Until in proper form he demands and is refused pos-session." They construe it to mean the rents and profits, but the only logical interpretation of the word "possession" is that it means possession of the land as shown by the context. (Jones on Mortgages, 5th ed., sec. 670; *Teal* v. *Walker,* 111 U. S. 242, 28 L. Ed. 415, 4 Sup. Ct. Rep. 420 [see, also, Rose's U. S. Notes]; *Freeman* v. *Campbell,* 109 Cal. 360, 42 Pac. 35; *Moncrieff* v. *Hare,* 38 Colo. 221, 7 L. R. A. (n. s.) 1001, 87 Pac. 1082; *McGahan* v. *First Nat. Bank,* 156 U. S. 218, 39 L. Ed. 403, 15 Sup. Ct. Rep. 347 [see, also, Rose's U. S. Notes]; *Simpson* v. *Ferguson,* 112 Cal. 180, 53 Am. St. Rep. 201, 40 Pac. 104, 44 Pac. 484.)

Appellants seem to rely upon the case of in the *Matter of Jarmulowsky,* 224 Fed. 141, but as they do not cite the

provision of the mortgage and since we have not access to that case, we are unable to analyze it and determine what was actually decided. But if that court did rule as contended by appellants, then it is right in the teeth of the principle of the cases heretofore cited and directly adverse to the decisions of the supreme court of the United States and of this state, and we do not believe that the decision of the federal district court should prevail in this matter.

MR. JUSTICE MYERS delivered the opinion of the court.

This is an action in conversion. Plaintiff sued for the value of 480 bushels of wheat.

The complaint alleges that plaintiff is and was at, all times mentioned trustee in bankruptcy of the estate of one Berry Mackey, a bankrupt; that Frary & Burlingame, defendants, are partners; that, during 1924, defendant Fuller cultivated land belonging to said estate and threshed and harvested, on said land, and delivered to an elevator 480 bushels of wheat, of the value of $624, belonging to plaintiff; that on November 19, 1924, defendants wrongfully took and carried away the wheat, then owned by plaintiff and he being entitled to the possession thereof, and converted it to their own use, to plaintiff's damage in the sum of $624; that plaintiff made demand of defendants for the storage tickets for the wheat or the value thereof and defendants failed to comply. Judgment for the value is asked.

The answer admits the allegations as to the character of the litigation. It then admits that Fuller cultivated the land, threshed and harvested the wheat and delivered it to an elevator; admits the value; admits the demand of plaintiff and the failure of defendants to comply; denies all other allegations of the complaint.

Further pleading, for an affirmative defense, the answer alleges that Frary & Burlingame, partners and defendants, are agents of the Phoenix Mutual Life Insurance Company, a corporation, and, as such, have charge of its mortgage loans

in Montana; that, on August 2, 1919, Berry Mackey and Emma M. Mackey, his wife, executed and delivered to that corporation their promissory note for the sum of $6,000 and, to secure it, executed and delivered to the corporation a mortgage of the land on which the wheat was harvested; that the mortgage was recorded; that, on October 31, 1921, Berry Mackey was adjudged a bankrupt and, on December 9, 1921, F. A. Flanagan, plaintiff, was appointed trustee in bankruptcy of his estate and qualified and has been since and is such trustee; that thereafter Berry Mackey died and, on October 22, 1923, Emma M. Mackey was appointed executrix; that the mortgagors failed to pay the interest due on the mortgage on December 1, 1923, amounting to $360, and that, thereupon, under the terms of the mortgage, the principal became due and on October 13, 1923, the Phoenix Mutual Life Insurance Company commenced an action to foreclose the mortgage; that because of the failure of the mortgagors to pay, December 1, 1923, interest or principal, due that day, the insurance company, on September 12, 1924, demanded of Defendant Fuller, tenant in possession of the mortgaged land, the rents and profits of the land for 1924 and he agreed to deliver to it such rents and profits and Emma M. Mackey consented thereto; that thereafter Defendant Fuller did deliver to Defendants Frary & Burlingame, as agents, such rents and profits, being 480 bushels of wheat, of the value of $624, which they accepted as such rents and profits.

A copy of the mortgage was attached to and made a part of the answer. It contains a default provision, providing that in the event of the failure of the mortgagors to pay principal or interest, when due, or any taxes, assessments or insurance, as required, or to comply with any of the requirements of the mortgage then all of the debt secured should become due and collectible and the mortgagee could pay all such taxes and the like and the mortgage could be foreclosed for the full amount, with disbursements; and all rents and profits of the property should then immediately accrue to the benefit of the mortgagee

and a receiver might be appointed to collect the rents, issues and profits pending the foreclosure suit and until the expiration of the time for redemption. There is in the mortgage no provision, such as often found, for immediate entry upon and possession of the premises, by the mortgagee, upon any default of the mortgagors; nor is there any provision, as is common, for summary sale of the premises, without foreclosure, in the event of a default.

The case was tried to the court, without a jury. Judgment for plaintiff was rendered. Defendants appealed and assign as specifications of error that the judgment is contrary to the law and the evidence is insufficient to justify the judgment.

The issue is wholly one of law. The facts are few. There is substantially no conflict in what little evidence there is.

Mackey and wife executed their note and mortgage to the [1] insurance company, August 2, 1919. The mortgage was recorded. October 31, 1921, Mackey was adjudged a bankrupt. December 9, 1921, Flanagan, plaintiff, was appointed trustee in bankruptcy of his estate and qualified and took charge. Thereafter (not shown when) Mackey died. October 22, 1923, the widow was appointed executrix but we do not see that that is any factor in the case. December 1, 1923, interest, in the sum of $360, on the note became due. It was not paid then nor thereafter but remained unpaid. In 1924, Fuller, a defendant, was on the land, as he had been theretofore. Flanagan, as trustee, leased the land to Fuller, to farm, for the year 1924. The terms of the lease provided that Fuller should receive two-thirds of the crop, the remaining one-third to be hauled to an elevator at Loma and the tickets representing such third to be delivered to Flanagan, as trustee. Fuller raised a crop of wheat in 1924. He harvested and threshed it, in August, of that year, and the grain was put in the granary on the premises. One-third of it amounted to 480 bushels, of the value of $624. September 12, 1924, Frary & Burlingame, defendants and agents, demanded ·of Fuller the landlord's share of the crop. At that time he did not act

on the demand. Later, he hauled the landlord's one-third to
the elevator and there stored it, as required by the lease given
him by plaintiff, and took storage tickets therefor. De-
mand was made of him, by plaintiff's counsel, for the storage
tickets but the demand was not complied with. October 13,
1924, the insurance company instituted an action to foreclose
its mortgage. About November 19, 1924, Fuller delivered to
Frary & Burlingame the storage tickets for the one-third of
the grain claimed by both them and plaintiff and Frary &
Burlingame got the value thereof. Hence, this action.

We deem the decision of this court in the case of *Sharp
Bros., Inc.,* v. *Bartlett,* 76 Mont. 415, 248 Pac. 199, decisive of
this case. The two are quite analogous. That case was in
claim and delivery and this case is in conversion but on prin-
ciple we see no difference. In the *Sharp-Bartlett Case,* the
mortgage contained, verbatim, the same default provision as
is contained in the mortgage in this case. In neither case did
the mortgage give the mortgagee the right to enter and take
possession of the mortgaged premises. In that respect, both
cases differ from the case of *Union Central Life Ins. Co.* v.
*Jensen,* 74 Mont. 70, 237 Pac. 518.

True, as counsel for defendants say, the decision of the
*Sharp-Bartlett Case* is predicated in part upon the rule, stated
in the opinion, that in claim and delivery the defendant can
defeat the plaintiff's right of recovery by showing that the
right to the possession of the property is in a third party,
with the qualification that the rule has no application unless
the third party's right of possession is absolute and that the
mere fact that property is mortgaged to another does not, of
itself, defeat the plaintiff's right of action, and the opinion
cites *Conrad Merc. Co.* v. *Siler,* 75 Mont. 36, 241 Pac. 617.
However, the decision in the *Sharp-Bartlett Case* goes further
than that. The opinion says: "Seemingly, the court accepted
Olson's version that he had not agreed to turn over to Frary,
for the mortgagee, the crop rentals of the land for 1924, to
apply on the mortgage, and, therefore, he had not divested

himself of the right of possession in the same." Thus, in that
case, this court held that the right of possession of the land-
lord's share of the crop was in Olson, the landlord. Under
similar conditions, in this case, it was in plaintiff. If the
mortgage provision as to rents and profits, in that case, in
the event of default, did not divest Olson of the right to the
possession of the landlord's share of the crop, it did not in
this case.

Clearly, at the time of the alleged conversion, plaintiff, as
trustee in bankruptcy, standing in the shoes of the mortgagors
and being in fact the landlord, was the owner of the wheat
in the elevator and which, it is claimed, was converted and
he was entitled to the possession thereof. He had a proprie-
tary interest in the crop while it was grow ng and he became
entitled to one-third of it, immediately upon the harvesting
and threshing of the crop. *Power Merc. Co.* v. *Moore Merc.
Co.*, 55 Mont. 401, 177 Pac. 406, is authority for that asser-
tion. Let it be remembered, too, that Frary & Burlingame did
not make a demand on Fuller for the landlord's share until
after the crop had been harvested and threshed.

This case is a stronger case, in favor of the plaintiff, than
was the *Sharp-Bartlett Case*. In that case, the landlord's
share was seized immediately upon the threshing of it, while
in possession of the tenant and before it had been delivered
to the landlord; while in this case the wheat had been not
only harvested and threshed but it had been segregated and
the landlord's share had been stored, delivered, in an eleva-
tor, as provided by the terms of the lease, before defendants,
through Fuller's action, obtained possession thereof. When
the landlord's share was stored in the elevator, it was plain-
tiff's property and it was Fuller's duty to give plaintiff the
storage tickets but he did not do it and, instead, he and the
other defendants converted the property.

This view is supported not only by the Montana cases we
have cited but by *Freeman* v. *Campbell*, 109 Cal. 360, 42
Pac. 35; *Moncrieff* v. *Hare*, 38 Colo. 221, 87 Pac. 1082; *Mc-*

*Gahan* v. *First Nat. Bank,* 156 U. S. 218, 39 L. Ed. 403, 15
Sup. Ct. Rep. 347 [see, also, Rose's U. S. Notes]; Jones on
Mortgages, 5th ed., sec. 670; and other authorities..

Fuller, in his testimony, made some reference to a dispute
of Mrs. Mackey's as to who was entitled to the rental and,
also, to a verbal understanding with Mrs. Mackey but he
testified to nothing that would relieve him of his duty to
put in the elevator, for plaintiff, one-third of the wheat. He
operated under a written lease from plaintiff, which required
him to put the third in the elevator, for plaintiff. He had
solicited the written lease; he obtained and accepted it and
proceeded under it; he was bound by it. The estate being in
bankruptcy and in charge of plaintiff, as trustee in bank-
ruptcy, there is nothing in the record to show that Mrs.
Mackey had any authority in the premises. There is nothing
in the record to justify Fuller in turning over to Frary &
Burlingame the landlord's share of the crop.

To the doctrine declared by the supreme court of the
United States in *Freedman's Savings & Trust Co.* v. *Shep-
herd,* 127 U. S. 494, 32 L. Ed. 163, 8 Sup. Ct. Rep. 1250,
cited by counsel for defendants, to the effect that it is com-
petent for the parties to provide in the mortgage for the
payment of the rents and profits to the mortgagee, while the
mortgagor remains in possession, we assent but that agree-
ment is not found in the mortgage in this case. Stripped
of parenthetical words and clauses, not necessary to the point
[2] in question, the default provision in the Mackey mort-
gage says: "It is agreed that if the mortgagor or the maker or
makers of the obligation secured in this indenture shall fail to
pay the principal or any interest as the same becomes due,
* * * then all of the debt secured hereby shall become due
and collectible * * * and this mortgage may be foreclosed
for the full amount * * * and all rents and profits of
said property shall *then* immediately accrue to the benefit
of the said mortgagee; and that a receiver may be appointed

to collect the rents, issues and profits *pending* the foreclosure suit and until the time for redemption expires."

We hold that, under a plain construction of that language, taken at its ordinary meaning, it means that, upon default in payment of principal or interest, when due, foreclosure proceedings may be instituted and *then* the rents and profits shall accrue to the mortgagee and a receiver may be appointed to collect the rents, issues and profits *pending* the foreclosure suit. Pending the foreclosure suit undoubtedly means while the suit is pending; after its institution. Taken together, undoubtedly the words of the default provision mean that the rents and profits shall accrue to the mortgagee only after suit is brought and the mortgagee may have appointed a receiver to collect the same while the suit is pending and during the further period of redemption. The word "issues," injected into the latter part of the provision, means nothing more than is denoted by "rents and profits." To our minds, it is intended that a receiver must be appointed, to collect the rents and profits, if the mortgagee shall claim them. That was not done. This conversion took place November 19. Foreclosure suit was started October 13. When a decree was obtained, if at all, is not shown. There is nothing to show it was obtained before November 19 and we may not assume it was.

Counsel for defendants cite a number of authorities in support of their contentions. We have examined all of them and we do not consider any of them applicable. One of the chief cases upon which counsel rely is that of *In re Jarmulowsky,* 224 Fed. 141. The mortgage in that case was not the same as in this case. In that case, the mortgage provided that, upon default in payment of principal or interest, the mortgagee would have the right to enter upon and take possession of the premises and to let the same and to receive the rents, issues and profits thereof, "hereby assigned to the mortgagee." No such sweeping provision is in the Mackey mortgage; no provision for entering or taking possession

of the premises or letting the same; no assignment of the rents, issues and profits. *In re Israelson,* 230 Fed. 1000, cited by counsel, is a case in which the mortgage contained the same provisions as did that in the case last mentioned. Other cases cited by counsel we deem equally inapplicable.

We hold that the trial court did not err in rendering its judgment. The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES STARK, MATTHEWS and GALEN concur.