**In re KURTH RANCH; Kurth Halley Cattle Company; Richard M. and Judith Kurth, husband and wife; Douglas M. and Rhonda I. Kurth, husband and wife; and Clayton H. and Cindy K. Halley, husband and wife, Debtors.**

**Robert G. DRUMMOND,
Trustee, Plaintiff,**

v.

**FARM CREDIT BANK OF SPOKANE, successor by merger to the Federal Land Bank of Spokane, Defendant.**

**Bankruptcy No. 88–40629–011.
Adv. No. 289/0078.**

United States Bankruptcy Court, D. Montana.

Feb. 13, 1990.

John Doubeck, Helena, Mont., for debtors.

John P. Paul, Alexander, Baucus & Linnell, P.C., Great Falls, Mont., for Farm Credit Bank of Spokane.

Arthur G. Matteucci, Great Falls, Mont., for Norwest Bank Great Falls, N.A.

Robert Drummond, Great Falls, Mont., trustee.

Neal G. Jensen, Great Falls, Mont., Asst. U.S. Trustee.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this adversary proceeding, the Trustee in this Chapter 11 case filed a complaint under 11 U.S.C. § 544 against the defendant, Farm Credit Services (FCS), successor to Federal Land Bank of Spokane, for turnover of lease payments generated from the real property owned by Debtors Richard and Judith Kurth. After answer, trial of said issue was concluded on January 23, 1990, and memoranda have been filed by the parties. In addition, since the record at trial was kept open, documents submitted by the Trustee have been now received in evidence as Exhibits 33 to 37. This Court will further take judicial notice of all proceedings in the Chapter 11 case which affected the right of the parties.

This matter is a core proceeding involving title to rents generated post-petition from lease of the Debtors' farm. The action by the Trustee under 11 U.S.C. § 544 seeks a determination of the validity of the defendant's security interest in such rents and is a core proceeding under 28 U.S.C. § 157(b)(2)(E) (orders to turn over property of the estate), (K) (determination of the validity, extent or priority of liens) and (O) (proceedings affecting the liquidation of assets of the estate). FCS has filed a proof of claim in this Chapter 11 case and has consented to the jurisdiction of this Court. Order of December 15, 1989, denying Motion for Abstention.

The facts developed at trial are not in dispute. FCS holds three separate mortgages to Debtors' farm property located in Choteau County, Montana. The mortgages were taken to secure the repayment of three promissory notes dated July 20, 1981 and May 25, 1982. At the date of the filing of the Chapter 11 Petition, FCS was owed $1,447,299.01, of which, according to the proof of claim, $891,000.00 was secured and $556,299.91 was unsecured. Prepetition, FCS had commenced foreclosure against Debtors' real property in three separate State court actions (DV–87–030, DV–87–040, DV–87–041, Twelfth Judicial District, Choteau County, Montana). Each action sought judgment on the promissory notes, a determination that Defendant FCS's mortgage was a first and prior lien, that the mortgage be foreclosed and that sale be had upon foreclosure. During the course of the State court proceedings, FCS sought the appointment of a receiver under Montana law, which was denied by the State District Court on December 23, 1987. While the State foreclosure actions were pending, Debtors filed for relief under Chapter 11 on September 9, 1988, thereby staying continuation of each action by reason of the automatic stay imposed by 11 U.S.C. § 362. On December 19, 1988, upon

Motion of creditors, including FCS, a Trustee was appointed pursuant to Section 1104 of the Bankruptcy Code.

On January 10, 1989, FCS filed a Motion for Relief From Automatic Stay, alleging in part, the debt due FCS was $1,517,266.80, that the fair market value of the mortgaged property was $912,000.00, that there is no possibility of reorganization, and that, in the event relief from the stay is granted, "Creditor will seek foreclosure and liquidation of the above-described collateral in accordance with applicable non-bankruptcy law and will dispose of said collateral in a commercially reasonable manner," and upon sale, account to the Court for all proceeds of sale. The Trustee and Debtors opposed the Motion and hearing was held thereon on January 24, 1989, with the FCS presenting the only evidence and testimony at the hearing.

On February 9, 1989, this Court entered an Order granting FCS's Motion for Relief From the Automatic Stay. *See, In re Kurth Ranch*, 6 Mont.B.R. 521, 97 B.R. 33 (Bankr.Mont.1989). It was intended by that Order, in accordance with the Motion filed by FCS, to allow FCS to continue the State foreclosure cases to entry of decree and sale. No mention was ever made by FCS to this Court upon hearing of the Motion that FCS would seek the appointment of a State court receiver. The record reflects that at the time FCS filed its Motion for Relief From Stay, there was in fact pending in the State court actions a request by FCS for appointment of a receiver under Section 27–20–102, Mont.Code Ann.[1], which had been set for hearing the day Debtors filed their Chapter 11 case. That hearing was aborted by reason of the Automatic Stay. FCS then rescheduled the Motion for hearing on March 3, 1989, and issued a subpoena to the Trustee to appear at the hearing. Objection to the appointment of a

---

**1.** Section 27–20–102, Mont.Code Ann. provides in pertinent part:

"A receiver may be appointed by the Court in which an action is pending or by the judge thereof ...

(2) in an action by a mortgagee for the foreclosure of his mortgage and sale of the mortgaged property, where it appears that the mortgaged property is in danger of being lost, removed or materially injured or that the condition of the mortgage has not been performed and the property is probably insufficient to discharge the mortgaged debt, ..."

receiver was made in the State court by the Assistant U.S. Trustee on behalf of the Trustee, who raised concerns that post-petition rents were property of the estate. At this date in the case, the Trustee had not been joined as a party defendant. That joinder took place on March 13, 1989, by the filing of an amendment to the complaints in each Court action. Without seeking authority from this Court, the Trustee on March 7, 1989, entered into a Stipulation with FCS and the Debtors agreeing to an appointment of State court receiver "for the purpose of managing and operating the property subject to the foreclosure action." The receiver was to proceed to obtain a cash lease on the property, to be effective after May 1, 1989. In the Stipulation, the parties "expressly reserve, and do not waive, any other right or remedy to which that party is otherwise entitled," and the Trustee "specifically reserves the right to contest the jurisdiction of the above-entitled Court with respect to the proceeds from the receivership". An Order appointing Joseph Kraft as receiver was entered pursuant to the Stipulation on March 10, 1989. The Trustee in the Stipulation preserved all rights in the rents to be earned by the lease of the premises as property of the estate.

The State court receiver proceeded to enter into a one-year lease of the property to be effective May 1, 1989. However, the Trustee, on April 11, 1989, filed in this Court a Motion for Authority to Lease Pasture, setting forth the terms of the March 10, 1989, Stipulation. The Trustee's Motion was resisted by the Debtor, who had filed a Disclosure Statement and Plan of Reorganization on April 3, 1989. FCS and another major secured creditor, Norwest Bank, joined in the Trustee's Motion. After hearing on April 27, 1989, the Court issued an Order denying the right of the Trustee to enter into a cash lease for the premises until the Debtors' rights to reorganize were fully determined. This Court specifically held the actions of the State receiver impinged on the Debtors' reorganization efforts, and that the Trustee's agreement to the Stipulation of March 13, 1989, would deprive the Debtors of their statutory right to attempt reorganization. This Court de-

nied the State court receiver the right to manage or operate the property, thereby allowing the Debtors to remain in possession pending final hearing on the Plan. On May 12, 1989, the proposed lessee filed a Motion for Order Confirming Farm Lease. After hearing, the Court issued two Orders on May 26, 1989, in which it found the Debtors' Plan of Reorganization could not be legally confirmed, thereby dismissing the Plan and, in the second Order, confirmed the cash lease of April 13, 1989, as the Trustee was then in a position to exercise his judgment to approve the lease agreement. The lessee entered into two cash leases concerning grazing and farm land for which he paid the receiver the sum of $79,100.00 cash. On June 7, 1989, the State District Court entered its Order approving the receiver's lease of the premises. The receiver presently has on hand the sum of about $76,215.31, which is the amount in contest between the Trustee and FCS.

The Trustee contends the lease funds are property of the estate because FCS did not perfect a security interest in rents under the Montana Uniform Commercial Code and, as a second position, the rents are property of the estate because FCS did not perfect a security interest in such funds under Montana law by taking possession of the Debtors' farm lands through receivership pre-petition, and § 546(b) does not apply under the facts of this case. FCS, in answer, states the Montana Uniform Commercial Code is inapplicable and FCS is entitled to the rents by reason of the mortgage clause involving rents and appointment of a receiver in the foreclosure action.

■■■ The first issue is whether the Montana Uniform Commercial Code (U.C.C.) applies to the rents generated from the lease of real property. Section 30–9–104, Mont.Code Ann. provides:

"*Transactions excluded from Chapter.* This Chapter does not apply:

\*      \*      \*      \*      \*      \*

(10) except to the extent that provision is made for fixtures in 30–9–313, to the creation or transfer of an interest in a

lien on real estate, including a lease or rents thereunder;"

Subsection (10) is a verbatim adoption of 9–104(j) of the U.C.C. The holding of *In re Valley Liquors, Inc.,* 103 B.R. 961, 966 (Bankr.N.D.Ill.1989) answers the first issue in favor of FCS.

> "Section 9–104(j) of the Uniform Commercial Code as adopted by Illinois excludes 'the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder' from its coverage. *Ill.Rev.Stat.*1987, Ch. 26. Interpreting the meaning of § 9–104(j) of the Uniform Commercial Code, the Eighth Circuit in *In re Standard Conveyor Co.,* 773 F.2d 198, 204 (8th Cir. 1985), citing to a Third Circuit opinion, [*In re Bristol Associates, Inc.,* 505 F.2d 1056, 3rd Cir.1974] found that 'the intent of the Legislature was to exclude from the filing and perfection provisions of Article 9 the use of a lease as collateral for a loan.' Accordingly, the Eighth circuit found that an Article 9 security interest in the underlying proceeds of a real estate lease, i.e. rents, is expressly precluded by U.C.C. 9–104(j). *In re Patterson,* 64 B.R. 189 (Bankr.N.D.Ill.1986), found *In re Standard Conveyor Co.,* controlling for the holding that rents are not general intangibles within the meaning of the Uniform Commercial Code. It follows that just as the rents flowing under a lease cannot be U.C.C. Article 9 collateral for a loan, neither can a leasehold option to purchase realty be collateral under Article 9."

In accord is *In re Le Seuer's Fiesta Store, Inc.,* 40 B.R. 160 (Bankr.Ariz.1984). Moreover, in Montana, Section 70–20–101, Mont. Code Ann., provides that no interest in real property, except for lease under one year, can be assigned, granted or created other than in writing. The law has long been established in Montana as set forth in *In re Tuohy's Estate,* 23 Mont. 305, 58 P. 722, 723 (1989) as follows:

> "In Civ.Code, § 1642, the term 'conveyance for the purposes of recordation' embraces 'every instrument in writing by which an estate or interest in real property is created, aliened, mortgaged or encumbered, or by which the title to real property may be affected, except Wills. Under Section 1641, leases for terms exceeding one year are required to be recorded. Therefore, this class of leases falls within the meaning of 'conveyance' as used in Section 1642."

Civil Code § 1642 is now codified in § 70–21–301, Mont.Code Ann. Accordingly, the leasehold interests and rents received therefrom are not subject to the provisions of the Montana U.C.C. Rather, the lease must be recorded in the office of the appropriate county Clerk and Recorder where the real property is situated to be valid against the Trustee. Failure of the FCS to follow the provisions of the Montana U.C.C. and file a financing statement for rents does not destroy FCS's right to post-petition rents in and of itself. This brings us to the second, and more central issue in this proceeding.

The second issue involves two interrelated matters, one dealing with the proper method of perfection of rents by a mortgagee, and the second, as to whether that perfection can arise post-petition. It is well established that the determination in a bankruptcy proceeding of the mortgagee's security interest in rents from leases of the mortgaged property must be resolved by reference to state law. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).[2]

Montana, like most western states, follows the "lien" theory of mortgages, which provides the mortgagee is not the owner of the property and is not therefore entitled to possession, rents or profits. Section 71–1–105, Mont.Code Ann. provides:

> "A mortgage does not entitle the mortgagee to the possession of the property unless authorized by the express terms of the mortgage, * * *"

Section 71–1–202, Mont.Code.Ann., states a mortgagee may only recover possession of

---

**2.** While *Butner* was a pre-code case, it is nevertheless applicable to cases under the 1978 Bankruptcy Code. *In re Multi-Group III Ltd. Partnership,* 99 B.R. 5 (Bankr.Ariz.1989).

the real property through foreclosure and sale. *Federal Land Bank of Spokane v. Green*, 108 Mont. 56, 90 P.2d 489, 492 (1939) holds a mortgage creates no estate or interest in land, since it is simply security for the performance of an act. Such is the essence of the "lien" theory of mortgages. It follows, therefore, that in Montana, a mortgagee may secure a security interest in the rents from the mortgaged property only by appointment of a receiver, even though, as is the fact in this case, the mortgage instrument contains an assignment of rent provision upon default. *Long v. W.P. Devereaux*, 87 Mont. 198, 286 P. 402 (1930), relying on the predecessor to Section 27–20–102, Ftn. 1, supra, held, following *Sharp Bros., Inc. v. Bartlett*, 76 Mont. 415, 248 P. 199:

> "The prevailing rule is that if a mortgagee desires to avail himself of the right to rents and profits pledged by a mortgage upon real estate without the right of immediate possession of the land, he must claim them by invoking the aid of a court of equity for the appointment of a receiver to take possession of the rents and profits. This right is conferred by section 9301, Revised Codes of 1921.

> \*    \*    \*    \*    \*    \*

> And where the mortgage does not give to the mortgagee the right of possession of the mortgaged property upon default of the mortgagor and where a receiver is not appointed by the court in the foreclosure proceedings to collect the rents, the decided weight of authority holds that the assignee in bankruptcy (or, if he disclaims an interest as here, the mortgagor), and not the mortgagee, is entitled to the rents, issues, and profits before foreclosure of the mortgage, even though they are expressly covered by the mortgage. *Flanagan v. Fuller*, 79 Mont. 590, 257 P. 475; *Sharp Bros., Inc., v. Bartlett*, supra; *In re Foster* 9 Fed. Cas. 523, No. 4963; *Foster v. Rhodes* 9 Fed.Cas. 572, No. 4981; *In re Dole* (D.C.) 110 F. 926; *In re Banner* (D.C.) 149 F. 936; *In re Clark Realty Co.*, [148 C.C.A. 342, 234 F. 576 (1916)] supra; *In re Brose* (C.C.A.) [166 C.C.A. 162,] 254 F. 664."

Thus, FCS, by its own admission, had an inchoate lien to the rents which must be perfected under state law by appointment of a receiver before sale of the property under a decree of foreclosure. FCS argues that it sought and obtained such appointment and thus properly perfected its right to the cash rentals now held by the receiver. This puts into issue the question of whether the mortgagee can perfect its inchoate right post-petition, i.e., after a bankruptcy petition is filed.

The case authorities are split on the right of post-petition perfection, which brings into play § 546(b) of the Bankruptcy Code. Section 546(b) provides:

> "(b) The rights and powers of a trustee under section 544, 545, and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement."

Section 546(b) requires that perfection of the rents shall be perfected by notice to the Bankruptcy Court or possessor of the property that the secured creditor intends to enforce its lien in the rents. Such was the holding of *In re Gelwicks*, 81 B.R. 445 (Bankr.W.D.Ill.1987), which followed *In re Village Properties, Ltd.*, 723 F.2d 441 (5th Cir.1984), cert. denied 466 U.S. 974, 104 S.Ct. 2350, 80 L.Ed.2d 823; *In re Morning Star Ranch Resorts*, 64 B.R. 818 (Bankr.D. Colo.1986); *In re Sampson*, 57 B.R. 304 (Bankr.E.D.Tenn.1986); *Consolidated Capital Income Trust v. Colter, Inc.*, 47 B.R. 1008 (D.D.C.1985); *In re Fluge*, 57 B.R. 451 (Bankr.D.N.D.1985), and which has been followed in *Virginia Beach Federal Savings and Loan Association v. Wood*, 97 B.R. 71 (D.N.D.Okl.1988).

FCS contends it gave "notice" as requested by § 546(b) by seeking relief from the automatic stay and then promptly applying in State court for the appointment of a receiver. As noted above in the statement of facts, FCB never gave any notice to the Bankruptcy Court or Trustee that it was invoking the provision of § 546(b). Indeed, FCS representations to the Court that it would seek foreclosure after relief from the stay was entirely silent as to the appointment of a receiver. Moreover, the Trustee protected throughout his tenure his interests in the post-petition rents, both in this Court, and in the State court. Accordingly, I hold FCS failed to affirmatively invoke the provisions of § 546(b) to protect its rights in post-petition rents. See examples cited in *Gelwicks,* supra, at 448.

▅▅▅ But even if I were to conclude that FCS's Motion for Relief From the Automatic Stay and subsequent State court request for a receiver satisfied the provisions of § 546(b), I would further conclude that the better-reasoned cases hold that § 546(b) only applies to post-petition perfection where state law allows the perfection to relate back pre-petition. I adopt the legal position on this issue as reflected in *In re Association Center Ltd. Partnership,* 87 B.R. 142, 146 (Bankr.W.D.Wash. 1988), which states:

> "This court respectfully disagrees with *Gelwicks* and the 'vast majority' of the cases and concludes that § 546(b) may not be used to perfect a security interest in rents. The cases which have allowed § 546(b) perfection have misconstrued the purpose behind the statute. The problem was specifically addressed by another Judge of this Court in *In re Electric City, Inc.,* 43 B.R. 336 (Bankr. W.D.Wash.1984), wherein a county was attempting to perfect a lien for personal property taxes by arguing perfection under § 546(b). The Court reviewed the pertinent legislative history of § 546(b) which states:
>
> > 'The rights granted to a creditor under this subsection prevail over the trustee only if the transferee has perfected the transfer in accordance with applicable

law, and that perfection relates back to a date that is before commencement of the case ... The purpose of the subsection is to protect, in spite of the surprise intervention of [the] bankruptcy petition, those whom state law protects by allowing them to perfect their liens or interests as of an effective date that is earlier than the date of perfection.'

H.R.Rep. No. 95–595, 95th Cong., 2nd Sess. 86 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787. The Court concluded that post-petition perfection, pursuant to § 546(b), was available only where the particular statute authorized relation back. The recently decided case of *In re Prichard Plaza Associates Limited Partnership,* 84 B.R. 289 (Bankr.D.Mass. 1988), reached the same conclusion.

> 'Section 546(b) is designed to affirm the validity of statutes such as 9–301(2) of the U.C.C., which permits a purchase money security interest to be perfected within ten days after the debtor receives possession of the collateral ... Mechanics liens are also favored interests that are given retroactive effect ... If the particular statute has no retroactive effect, § 546(b) does not apply.'

> This court agrees with the above analysis. Section 546(b) is basically a time statute. It is not applicable unless the particular statute authorizes retroactive effect. The Washington statute at issue in this case (R.C.W. 7.28.230) has no such effect. Therefore, Traveler's may not perfect its inchoate lien on the rents simply by giving notice pursuant to § 546(b)."

The matter is further explained in *In re Multi–Group III Ltd. Partnership,* supra, holding that since rents can only be perfected by possession, that possession, through a receiver, must occur pre-petition, for under § 546(b), the appointment of a receiver post-petition does not relate back to the commencement of the bankruptcy case so as to defeat the Trustee's rights as a bona fide purchaser under § 544. *Multi–Group* states (citing *In re Casbeer,* 793 F.2d 1436 (5th Cir.1986)):

" 'To allow otherwise would authorize the collection of pre-petition rentals, a result clearly at odds with *Taylor v. Brennan*, 621 S.W.2d [592] at 594 [ (Tex.1981) ], and the warning in *Butner v. United States*, 440 U.S. at 55, 99 S.Ct. at 918 * * * '

* * * * "

Its [§ 546(b) ] primary purpose "is to protect, in spite of the surprise intervention of a bankruptcy petition, those whom state law protects by allowing them to perfect their liens or interest as of an effective date that is earlier than the date of perfection." (citing text). Congress contemplated that the statute would further the objectives of the Uniform Commercial Code, which allows a security interest perfected within ten days to enjoy priority over a security interest that was given later but perfected sooner." *Id.* at 9.

See also, in accord, *In re Metro Square*, 93 B.R. 990, 999 (Bankr.D.Minn.1988). A typical example of such post-petition perfection allowable under § 546(b) by reason of Montana law is a mechanic's lien filed post-petition, which, by state law, relates back to the commencement of the work. *See, e.g., In re Brittian*, 6 Mont.B.R. 527, 106 B.R. 665 (Bankr.Mont.1989). FCS has shown no authority, and this Court has found no authority, that allows rent perfection to relate back to the date of execution of the mortgage, or some other time frame. Section 27–20–102, Mont.Code Ann., is prospective in application. Indeed, *Long v. W.D. Devereaux*, supra, clearly indicates that rents can only be perfected from the date the receiver is appointed, for failing such receivership, the right to rents is waived. *Id.* 286 P. at 405.

By reason of the foregoing, I conclude the Trustee, by reservation in the Stipulation, executed March 8, 1989, is entitled to the cash rents generated by the lease dated April 13, 1989, now held by the receiver, since FCS had no pre-petition security interest in such rents. This holding is not only buttressed by the Order of this Court of May 26, 1989, authorizing the Trustee to lease the farm premises to Pasha, as requested in Pasha's petition of May 12, 1989, but by the denial of the appointment of a receiver by the State court before the Chapter 11 case was filed. Accordingly, the Trustee, not FCS, is entitled to the net rent proceeds developed from the Pasha lease.

IT IS ORDERED the Clerk shall enter judgment in favor of the plaintiff, Robert J. Drummond, Trustee, and against the defendant, Farm Credit Service, and decree plaintiff is entitled to all net cash rentals from the Debtors' farm property held by the receiver, Joseph Kraft.